## STEVENS v. GRISSO.

No. 11529—Opinion Filed June 26, 1923.

1. **Bills and Notes—Bona Fide Purchaser—Taking Note as Collateral Security.**

One who takes a negotiable promissory note before maturity as collateral security is a purchaser for value and unaffected by any equities between the original parties to the note. of which he had no notice

2. **Same—Holders in Due Course.**

In the hands of any holder other than a holder in due course. a negotiable instrument is subject to the same defenses as if it were nonnegotiable, but a holder who derives his title through a holder in due course and who is not himself a party to any fraud or illegality affecting the instrument has all the rights of such former holder in respect of all parties prior to the latter.

3. **Notice — Mere Suspicion of Defective Title.**

Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or by circumstances to put him upon inquiry, will not defeat his title; that result can be produced only by "bad faith" on his part.

4. **Bills and Notes—Action on Note—Direction of Verdict.**

The record examined, and held, the evidence is undisputed that plaintiff derived his title to the note through a holder in due course and was not himself a party to any fraud or illegality affecting the instrument; therefore, there was no issue of fact to be submitted to the jury, and it was error for the trial court to overrule the motion to direct a verdict for the plaintiff.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Seminole County; J. W. Bolen, Judge.

Action by Fred L. Stevens against W. E. Grisso on promissory note. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

A. C. Markley, for plaintiff in error.

A. M. Fowler and Willmott & Roberts, for defendant in error.

Opinion by PINKHAM, C. This was an action instituted by the plaintiff in error, plaintiff below, against the defendant in error, defendant below, to recover judgment against the defendant upon a promissory note executed by the defendant to the Lyon Taylor Company.

It appears from the evidence that on June 10, 1914, the defendant executed and delivered a certain note payable to the order of the Lyon Taylor Company for the sum of $298; that prior to the maturity of the note, the same was indorsed by the Lyon Taylor Company and by it sold and delivered to the First National Bank of Iowa City, Iowa.

It further appears that on or about June 30, 1914, the Lyon Taylor Company applied to the bank for money for use in the company's business; the bank loaned the money. and the Lyon Taylor Company, through Mr. Taylor, after indorsing the same on behalf of the company, delivered the note in question together with a quantity of other notes to the bank as collateral security for a loan of $2,000. Thereafter the plaintiff purchased from the bank the note executed by the Lyon Taylor Company, which was transferred to him including the collateral security.

The answer of the defendant was to the effect that he was induced to execute the note sued upon through fraud, misrepresentations, and deceit practiced upon him by a representative of the Lyon Taylor Company; and further, that the plaintiff was connected with said payee in said note in said fraudulent scheme, and was in conspiracy with the Lyon Taylor Company to fraudulently play the role of innocent purchaser of said note in due course, and that plaintiff was fully cognizant of said fraudulent scheme on the part of the Lyon Taylor Company to cheat and defraud the defendant.

January 6, 1920, said cause was tried before court and jury, and judgment rendered for defendant.

At the close of all the evidence in the case, the plaintiff requested the court to instruct the jury to return a verdict in favor of the plaintiff and against the defendant. This instruction was refused by the court and excepted to by plaintiff.

Motion for new trial was filed and overruled, exceptions saved. Plaintiff appeals and assigns as error:

(1) "That said court erred in overruling plaintiff in error's motion for a new trial, to which ruling of the trial court said plaintiff in error duly excepted at the time.

(2) "The verdict of the jury rendered in said cause is not sustained by sufficient evidence and is contrary to the evidence, and is contrary to law.

(3) "The judgment of the court rendered in said cause is not sustained by suffi-

cient evidence and is contrary to the evidence, and is contrary to law.

(4) "The trial court erred in refusing to give to the jury the instructed verdict requested by plaintiff, and in refusing to direct the jury to return a verdict in favor of this plaintiff in error and against the defendant in error, to which ruling of the court the plaintiff in error duly excepted at the time.

(5) "The court erred in refusing to give to the jury in his charge the special instruction requested by the plaintiff in error, and to which ruling of the court exception was duly taken.

(6) "The court erred in giving to the jury over the objections and exceptions of the plaintiff in error, instruction No. 2.

(7) "The court erred in giving to the jury, over the objections and exceptions of the plaintiff in error, its instruction No. 4."

Counsel for plaintiff says in his brief: That the errors complained of in the first four assignments of error will be presented together in the argument on the fourth assignment, which is, that the court should have directed a verdict for plaintiff.

There is evidence in the record tending to show that the note in question was procured through the fraudulent acts of the representative of the Lyon Taylor Company. The evidence disclosed is clear and uncontroverted that defendant executed and delivered the note sued upon to the Lyon Taylor Company; that the Lyon Taylor Company, before its maturity, indorsed this note as collateral security on a loan for money obtained at the time from the First National Bank of Iowa City, a holder of this note in due course; that later the said bank sold and delivered the note to the plaintiff in this case.

There is no testimony in the record tending to show bad faith on the part of the bank, either of the alleged failure of consideration or the fraud practiced by the payee in the procurement of the note, and there is not a line of evidence in this record in any way tending to show that the bank was in collusion with the original payee, or was interested in or connected with it in any way, or that it had any information or knowledge of any circumstance that would put it on inquiry regarding the same.

The evidence disclosed in the record is that the First National Bank of Iowa City, Iowa, purchased the note for a valuable consideration before its maturity, without notice of any equities in favor of the maker and against the original payee. There was an utter want of proof of bad faith on the part of the bank in the purchase of the note without which, the note being negotiable, no sufficient evidence was shown. First State Bank of Oklahoma City v. Tobin, 39 Okla. 96, 134 Pac. 395; Forbes v. First Nat. Bank of Enid, 21 Okla. 206, 95 Pac. 785; McPherrin v. Tittle et al., 36 Okla. 510, 129 Pac. 721; Citizens' Savings Bank v. Landis et al., 37 Okla. 530, 132 Pac. 1101.

Counsel for defendant say in their brief that:

"The testimony shows that Fred L. Stevens (plaintiff) bought the note in this action from the First National Bank of Iowa City, and as a consequence of this transaction stepped in the shoes of the bank, and occupied the same position which the bank occupied with reference to the notes sued upon, if then the bank was not an innocent purchaser for value without notice, Fred L. Stevens does not become one and cannot claim the benefits of that position."

We agree with the proposition that if the bank was not an innocent purchaser for value without notice, plaintiff, who purchased the note from the bank, does not become one; but we cannot, in view of the facts disclosed in the record, assume that the bank was not an innocent purchaser for value without notice.

Section 7728, Comp. Stats. 1921, reads:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were nonnegotiable; but a holder who derives his title through a holder in due course, and who is not himself a party to any fraud or illegality affecting the instrument, has all the rights of such former holder in respect to all parties prior to the latter."

The plaintiff had all the rights to this note that the bank had as a bona fide purchaser before maturity. The only defense that could have been offered would have been that of "bad faith" and there is no evidence disclosed in the record indicating any bad faith on the part of the plaintiff or the First National Bank of Iowa City, from whom the plaintiff purchased the note. The plaintiff succeeded to the full rights of the bank and the sole question is, did the bank take as a holder in due course?

Section 7722, Comp. Stats. 1921, defines a holder in due course as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"First. That it is complete and regular upon its face;

"Second. That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"Third. That he took it in good faith and for value:

"Fourth. That at the time it was negotiated to him he had no notice of any infirmity in the instrument, or defect in the title of the person negotiating it."

The evidence without any contradiction shows that the bank was a bona fide purchaser and holder of the note in due course.

Counsel for defendant say in their brief:

"We think the facts surrounding the transaction involved in this lawsuit will make it clear to an unprejudiced observer that the bank knew enough of the business of the Lyon Taylor Company and of the circumstances of this matter to deprive it of the defense of good faith."

It is sufficient to say that an examination of the record in this case fails to disclose any fact or circumstance from which can be concluded that the bank had any knowledge of any defense to the note at the time it purchased it. A mere suspicion that the bank "knew enough of the business of the Lyon Taylor Company", and of the circumstances of the matter to deprive it of the defense of "good faith" will not defeat the bank's title.

In the case of Southwest National Bank of Commerce of Kansas City v. Todd, 79 Okla. 263, 192 Pac. 1096, it is said in the opinion:

"The rule announced in Conqueror Trust Co. v. Bayless Drug Co., 75 Okla. 288, 183 Pac. 419; McPherrin v. Tittle, 36 Okla. 510, 129 Pac. 721, is stated as follows: 'Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or of circumstances sufficient to put him upon inquiry will not defeat his title; that result can be produced only by 'bad faith' on his part'."

In the case of Forbes v. First Nat. Bank, 21 Okla. 206, 95 Pac. 785, it was contended that the neglect of the holder of negotiable paper to make inquiry of the payee as to how he obtained the note or draft would establish the "bad faith" of the holder, and would prevent him from averring that he was an innocent holder for value and it is said in the opinion in that case:

"We think this contention not well founded, for it has become the established rule in the federal courts of the Union and in the greater number of state courts that suspicion of defect of title or even gross negligence on the part of the taker of a negotiable instrument will not defeat his title." Atlas Nat. Bank v. Holm et al., supra; Murray v. Lardner, 2 Wall. (U. S.) 110, 17 L. Ed. 857; Hotchkiss v. Nat. Banks, 21 Wall. (U. S.) 354, 22 L. Ed. 645; Clerk v. Evans et al., 66 Fed. 263, 13 C. C. A. 433; Goodman v. Simonds, 20 How. (U. S.) 343, 15 L. Ed. 934.

In Murray v. Lardner, supra, Mr. Justice Swayne, speaking for the court, said:

"The possession of such paper carries the title with it to the holder: 'The possession and title are one and inseparable'. The party who takes it before due for a valuable consideration, without knowledge of any defect of title, and in good faith, holds it by a title valid against all the world. Suspicion of defect of title, or the knowledge of circumstances which would excite such suspicion in the mind of a prudent man, or gross negligence on the part of the taker at the time of the transfer, will not defeat his title. That result can be produced only by bad faith on his part. The burden of proof lies on the person who assails the right claimed by the party in possession. Such is the settled law of this court and we feel no disposition to depart from it."

In the case of First State Bank of Oklahoma City v. Tobin, 39 Okla. 96, 134 Pac. 395, it is said in the second paragraph of the syllabus:

"There being no evidence tending to show bad faith on the part of the purchaser in the purchase of a negotiable promissory note before maturity and for a valuable consideration, it is reversible error to overrule a request to peremptorily instruct the jury to return a verdict for the holder thereof, in an action on a note, and where no other defense is presented."

It is not necessary to consider other assignments of error on the part of the plaintiff, there being no sufficient evidence in the case to support the verdict of the jury and the judgment of the court thereon.

The evidence being undisputed that the plaintiff derived his title to the note through a holder in due course, and was not himself a party to any fraud or illegality affecting the instrument, there was no issue of fact to be submitted to the jury and the court should have sustained the motion to direct a verdict for plaintiff.

For reasons stated, the judgment should be reversed with intructions to grant a new trial.

By the Court: It is so ordered.