JAMES TALCOTT, INC., a corporation, Plaintiff in Error,

v.

William M. FINLEY, Defendant in Error.

No. 40199.

Supreme Court of Oklahoma.

March 3, 1964.

Ungerman, Grabel, Ungerman & Leiter, Tulsa, James Bounds, Hugo, for plaintiff in error.

Joe Stamper, Antlers, for defendant in error.

JOHNSON, Justice.

This action was commenced by plaintiff in error, plaintiff below, against the defendant in error, defendant below, to recover judgment for replevin and possession of 8,000 Chemell-Demlerchix chickens, or, in lieu thereof, judgment for their value in the sum of $3,749.40. The action was predicated upon a title retention note and contract entered into on April 20, 1959, between the defendant (buyer) and Chemell, Inc. (seller), and on May 12, 1959, sold and assigned by Chemell, Inc. to plaintiff. The defendant answered and alleged that the chickens were not as represented, and that there was a failure of consideration. He also denied that plaintiff was a holder in due course. A reply was filed by plaintiff wherein it denied generally and specifically the allegations of defendant's answer.

The evidence discloses that on April 20, 1959, the defendant was engaged in the feed and seed business in Antlers, Oklahoma. On that date he purchased from Chemell, Inc. 8,000 Chemell-Demlerchix chickens for an agreed price of $3,260.40, and executed an instrument which included a certain promissory note payable to Chemell, Inc. in said amount due on or before December 28, 1959. The note was to bear interest after maturity at the rate of 8 percent per annum and provided for an attorney fee of 15 percent. It was recited therein that it was given as consideration for the purchase price of 8,000 Chemell-Demlerchix, which the maker had that day purchased from Chemell, Inc. and received without warranty except that the title thereto was good. The instrument also contained the following phraseology:

"The undersigned agrees that proceeds of the sale of said chickens be held in trust for the holder of this instrument until all indebtedness covered by this instrument is paid in full. Title to said chickens shall be and remain in the holder of this note until the purchase price thereof is fully paid and until all other indebtedness of the undersigned to the holder of this note, including the purchase price of any feed, equipment or other advances used in the raising of said chickens, is fully paid. Title to any such feed, equipment or advances shall be and remain in the holder of this note until consumed in the production of said chickens or until it and the debt evidenced by this note is paid in full, and any indebtedness therefor shall become a part of the debt secured by said chickens and shall be subject to the terms of this instrument. It is further understood and agreed that title to said chickens is intended to secure the purchase price thereof and any other debt or obligation that the undersigned may owe to the said holder of this note at this time or for which the undersigned may become obligated to such holder at any time before the surrender and cancellation of this agreement. It is agreed that if said property is lost or destroyed in any way by death, disease or otherwise, that the undersigned remains bound for said debt. It is understood and agreed

that said dealer does not under any circumstances bind himself to sell or furnish to the undersigned, feed for raising said chicks to a marketable stage."

On April 21, 1959, the 8,000 Chemell-Demlerchix were delivered to defendant and by him placed in the hands of Claud H. Francis to be raised by Francis on his farm fourteen miles west of Antlers. On May 12, 1959, Chemell, Inc. sold and assigned, with full recourse, the instrument to the plaintiff. In August, 1959, the chickens then being approximately fifteen weeks old, the defendant confirmed to plaintiff his execution of said instrument acknowledging the indebtedness shown thereon. He made no complaint to plaintiff at this time that the chickens had been misrepresented to him by Chemell. On November 13, 1959, pursuant to request by plaintiff, the defendant confirmed the correctness of the indebtedness to plaintiff's auditors, plaintiff then being in the process of its annual audit. At this time the chickens were nearly thirty weeks old, had been laying since they were twenty weeks old, and though requested by plaintiff to furnish its auditors with the details of any differences relating to the indebtedness made no complaint that the chickens were other than represented. After December 28, 1959, the due date of the obligation, and in January, 1960. defendant having failed to pay, plaintiff demanded payment. Defendant refused to pay, basing his refusal for the first time upon the proposition that the chickens purchased by him from Chemell, Inc. were not as represented and contending that plaintiff was not a bona fide purchaser such as would destroy his defenses against Chemell, Inc.

The testimony of plaintiff was by deposition and supports plaintiff's contention that prior to maturity the note was transferred to it for a valuable consideration without knowledge on its part of any representation by Chemell to the defendant, and without knowledge or notice of any defects or infirmities in the chickens or in Chemell's

title to the note. It is further disclosed by the evidence on the part of defendant that approximately 1,000 of the chickens died from the date of delivery through their attainment of the age of production, which was about twenty weeks after delivery. Thereafter, the chickens died at the rate of about sixty a day, which was due to a condition known as prolapse or structural defect in the chickens which caused internal bleeding when laying eggs. It is further disclosed by the record that defendant admitted the execution of the note, his default thereof, and did not dispute the amount due thereon. He did not attempt a rescission of the contract prior to its maturity and did not dispose of the balance of the chickens until long after this action was instituted. Upon this evidence a jury rendered its verdict in favor of the defendant, whereupon the judgment herein was rendered and from which plaintiff appeals.

Plaintiff's first and second propositions are to the effect that the trial court erred in its refusal to sustain plaintiff's motion for a directed verdict at the close of all the evidence.

Under the first proposition presented, the basis of his argument is couched upon the theory that the instrument herein sued upon is a negotiable instrument, and he is a holder in due course. In support thereof he cites and relies on Howard v. Biggs, Okl., 378 P.2d 306; Phelps v. Malone, 193 Okl. 239, 142 P.2d 849; Steward v. Commonwealth Nat. Bank, 29 Okl. 754, 119 P. 216; Cedar Rapids Nat. Bank v. Bashara, 39 Okl. 482, 135 P. 1051; Stevens v. Grisso, 91 Okl. 154, 216 P. 671; First State Bank of Oklahoma City v. Tobin, 39 Okl. 96, 134 P. 395; Liberty Nat. Bank of Pawhuska v. Kendall, 113 Okl. 140, 240 P. 72; Loomis v. Cole, 119 Okl. 203, 249 P. 327; Sharp v. Dunlap, 176 Okl. 329, 55 P.2d 971; and Credit Adjustment Co. v. McCormick, 198 Okl. 348, 178 P.2d 610. We find no fault with the law stated in the cited cases, but we must deny their being applicable to the question here involved. In those cases the instruments sued upon contained all the ele-

ments of a negotiable instrument. The holder was seeking only the recovery of a money judgment predicated upon the promise to pay. The only issue was whether the assignee was a holder in due course.

In the case at bar the plaintiff (assignee holder) was seeking replevin and possession of the chickens, based upon the title retention clause contained in the instrument. When he sought possession by replevin he waived the question as to negotiability of the instrument, if it was negotiable, and thereby made available to defendant any defenses he had against the original payee. See Universal Credit Co. v. National Radio Mfg. Co., 174 Okl. 178, 49 P.2d 743; Mercantile Trust Co. v. Roland, 143 Okl. 190, 288 P. 300; and Selected Investments Corporation v. Lester, et ux., Okl., 327 P.2d 668.

While it might be argued by plaintiff that he abandoned the replevin portion of his action and sought only the recovery of a money judgment predicated upon the promise to pay, we must point out that the instrument herein sued upon is complete within itself, and though it apparently contains all the elements of a negotiable instrument, in addition thereto, it contains a provision and agreement that title to the chickens shall remain in the seller or his assignee, not only until the face amount of the note is paid, but until the purchase price of feed, equipment or other advances used in the raising of said chickens is fully paid. It expressly provides that title to the chickens is intended to secure not only the purchase price but other indebtedness as well, and if sales of the chickens are made, the maker agrees to hold the proceeds for the benefit of the holder of the note—to whatever extent that may be necessary to pay the note.

It is well settled that whenever a bill of exchange or promissory note contains a reference to some extrinsic contract in such a way as to make it subject to the terms of that contract, as distinguished from a reference merely that the extrinsic agreement was the origin of the transac-

tion or constitutes the consideration of the bill or note, the negotiability of the paper is destroyed. 3 R.C.L. 883. We see no difference from a note that makes reference to an extrinsic contract in such a way as to make it subject to the terms of the contract, and one such as we have here, wherein the note itself sets forth an additional contract of contingent indebtedness to which the property might become subject. Also the added agreement by the maker to hold the proceeds realized from the sale of the chickens for benefit of the holder constitutes the imposition of a trust upon future sales as long as the note is unpaid. Such added promise renders the note non-negotiable under the provisions of 48 O.S. 1951 § 25, then in effect.

Although non-negotiable, the instrument herein sued upon is a clear legal obligation as against the defendant, subject only to such defenses as defendant might have against the payee. Thus the question remains whether the defendant established a defense to the instrument as against the payee.

It is apparent from defendant's brief that his chief theory of defense was predicated upon a misrepresentation by the payee amounting to fraud. In a long line of cases this court has followed the universally accepted rule that fraud is never presumed, but the burden of establishing it by clear, satisfactory and convincing evidence rests upon the party relying thereon. Jungels v. Town of Hennessey, 202 Okl. 619, 217 P.2d 167; Gilbaugh v. Rose, 205 Okl. 508, 239 P.2d 406. It is well-settled hornbook law, universal in scope, that false representations which will invalidate a contract must be such as to constitute actual or legal fraud, and indispensable elements of such fraud are (1) that the representations must have been material to the contract or transaction at the time they were made; (2) the misrepresented facts must be facts of which the victim is ignorant, and which a person of ordinary sagacity and diligence would have acquired no knowledge; (3) the misrepresentations must be well calcu-

lated to deceive, and to induce the victim to make the contract; and (4) they must have induced him to do so. See Thompson v. Teel, 204 Okl. 105, 227 P.2d 395; Miller v. Long, 202 Okl. 34, 210 P.2d 147. In Thompson v. Teel, supra, 227 P.2d at page 400 it is stated:

" 'In this jurisdiction, where fraud is alleged in the procuring of a written instrument, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions of good faith.' * * * 'The testimony must be clear, unequivocal, and convincing, and cancellation cannot be had upon a bare preponderance of evidence which leaves the issue in doubt. * * * ' "

█ It must be conceded that when the defendant admitted the execution of the instrument sued upon, he then assumed the burden of establishing the defenses by him pleaded. Our review of the record herein discloses a complete absence of evidence which in any wise could be construed to say that the payee (seller) made any representation whatsoever to defendant (buyer) other than a warranty of title to the property sold.

█ In negotiable instruments "absence or failure of consideration" like unto a plea of fraud or misrepresentation is a matter of defense as against any person not a holder in due course. 48 O.S.1951 § 75. Likewise, one raising such a defense, if he admits the execution of the instrument sued upon, accepts the burden of establishing the defense pleaded. Central Nat. Bank of Junction City, Kan. v. Pyeatt, 97 Okl. 28, 222 P. 533. Herein, however, we have determined that the instrument sued upon is not a negotiable instrument but a conditional sales contract. Under this situation, defendant, by his own admission, knew of the condition of the chickens about which he now complains long before the due date of the instrument sued upon. Though he knew of the condition, he did not seek recission of the sales contract in accord with the provisions of 15 O.S.1961 §§ 233 and 235 requiring prompt recission and restoration. To avoid payment of the purchase price of the chickens under the contract on the ground of misrepresentation amounting to fraud and a failure of consideration, he had a choice of two sources of relief. On the one hand, "recission"; on the other, "affirmance of the contract and a claim for damages." Having failed to elect either, he must now be bound by the contract into which he entered.

█ As hereinbefore pointed out, the instrument sued upon is complete within itself and contains the entire contract between the defendant and plaintiff's assignor. The language used therein evidences, in our opinion, that the chickens were being furnished to defendant on an "as is" basis. While these words were not employed, the sense of the contract, nevertheless, was that Finley was taking the chickens upon the express condition that he accepted whatever risk was incident to raising them. By the terms of the instrument he agreed to pay the purchase price, no matter if the chickens were lost or destroyed in any way by death, disease or otherwise. From this flows the legal corollary that such a condition negatives both express and implied warranties and precludes the defense of failure of consideration. In Empire Oil & Refining Company v. Babson, 182 Okl. 336, 77 P.2d 682, this court said:

"To ascertain the meaning of a written contract the court must look to the whole instrument, having resort to the natural signification of the words used, in the order of grammatical arrangement in which the framers of the instrument have placed them. If, thus regarded, the words embody a definite meaning which involves no absurdity and no contradiction between different parts of the same writing, then the meaning apparent on the face of the instrument is the one to be taken, and no extraneous evidence is proper to give a different construction."

The contract may be harsher than the defendant intended to make, yet it is not the prerogative of this court to change the terms of an unambiguous contract, only to interpret it.

Since, in our opinion, the defendant has failed to establish a legal defense, it follows that the trial court erred in failing to sustain plaintiff's motion for a directed verdict at the close of all the evidence. The view we have here taken makes it unnecessary for us to consider plaintiff's third proposition relating to the instructions given.

The judgment is reversed, and the cause is remanded to the trial court to enter its judgment and decree in accordance with the conclusions and views herein expressed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JACKSON, IRWIN and BERRY, JJ., concur.

WILLIAMS, J., dissents.