**COMMERCE ACCEPTANCE OF OKLA-HOMA CITY, INC., a corporation, Plaintiff in Error,**

**v.**

**Elmer E. HENDERSON and Lavona M. Henderson, Defendants in Error.**

**No. 41600.**

Supreme Court of Oklahoma.

Oct. 1, 1968.

Paul L. Washington, Oklahoma City, for plaintiff in error.

Ungerman, Grabel, Ungerman & Leiter, Tulsa, for defendants in error.

BERRY, Justice.

Plaintiff in error, as alleged assignee and holder in due course, sued defendants in error for the balance due upon a note. Defendants denied execution of any note such as that sued upon, and further plead failure of consideration, fraud and misrepresentation. A jury trial resulted in a verdict for defendants, upon which the judgment appealed from was rendered.

The petition alleged defendants' execution and delivery of their note for $660.96 to Superior Products, Inc. on January 30, 1961, assignment of this note to plaintiff, defendants' subsequent default and failure to pay upon demand, by reason of which plaintiff asked judgment for amount of the note, interest and attorneys' fees.

Defendants denied execution of a note or that plaintiff was the real party in interest. Further, the alleged note originally was part of a Conditional Sales Contract executed by reason of fraud and misrepresentation of Superior's agents, and was without consideration. Defendants prayed for rescission of the void sales contract, tendered back everything of value received, and asked cancellation of the contract and dismissal of the purported action.

The evidence showed Superior was engaged in selling various types of household appliances directly to purchasers under a so-called "referral plan." The operation was conducted by salesmen who called upon prospects whose names had been furnished the company by other purchasers, who received a cash payment for furnishing the prospects' names. The prospect was paid ($5.00) for indulging the salesman's presentation. A purchaser who had signed an Owner's Participation Agreement supposedly would be paid ($5.00) for each prospect furnished, and an additional $25.00 in the

event the prospect purchased an appliance. The inducement, or "sales pitch", was that any purchaser would be able to discharge the monthly contract payments from the payments Superior supposedly would make to participating owners. There was uncontradicted evidence the usual contract price of items was tremendously inflated, such as the type freezer involved here, which was shown to have approximately $300.00 retail price from a dealer. The evidence also showed Superior failed to pay participating owners for referrals, paid some by bad checks, or deliberately changed names of referrals to avoid crediting a participating owner.

January 30, 1961, defendants signed a Conditional Sales Contract to purchase a home freezer for $660.96, with monthly payments of $18.36 for 36 months. This contract provided for retention of title by seller until contract discharged. The "NOTE" sued upon which was part of the contract when executed provided the same terms. Defendants first declined to purchase, explaining other financial obligations made further payments from their monthly income impossible. However, the salesman insisted the referral plan was sound and no problems would arise if defendants signed the contract, although stating Superior would have to take the freezer back in event the referral payments failed to discharge the obligation. As part of the inducement the salesman advised defendants to call certain individuals relative to workability of the plan. One purchaser was not available, and another had referral fees due from Superior but unpaid. Upon the salesman's advice defendants telephoned plaintiff's manager and were assured this was a good plan which was working and that no problems would arise. Defendants then agreed to purchase, signed the contract and a performance bond and submitted a list of prospects. The freezer was delivered, but no payments were received from Superior. Plaintiff thereafter demanded payment and was advised defendants were unable to pay except through referrals, and

the merchandise was tendered back to plaintiff.

Additional testimony was elicited from numerous (6) persons relative to purchases from Superior and subsequent dealings with plaintiff. All the conditional sales contracts had been assigned to plaintiff, in one instance even before delivery of the appliance (washer) which Superior thereafter failed to install. Upon inquiry concerning Superior's responsibility, plaintiff's representative assured the purchaser this was a good company. In every instance plaintiff advised the purchasers monthly payments had to be made without regard to whether Superior made any referral payments. The evidence further showed in every instance Superior failed to make referral payments to purchasers who furnished names of prospects.

The conditional sales contract and "NOTE" which defendants signed admittedly was one instrument when executed and later assigned to plaintiff. However, the note sued upon was detached from the contract some time between the date of assignment, which was not shown, and filing petition with the purported note attached as evidence of the indebtedness. Plaintiff's manager acknowledged familiarity with Superior's plan of operation and sales procedure, had lectured to the salesman, was familiar with details of the referral plan, and talked with Superior's manager regularly. In the Owner's Participation Agreement purchasers acknowledged all referral fees were payable by Superior, and had no bearing upon the Conditional Sales Contract. Neither the contract nor "NOTE" referred to the participation agreement, which provided each purchaser merely enrolled with Superior in an advertising program.

The first contention urged for reversal of judgment is that the court erred in holding plaintiff was not a holder in due course, as defined by 48 O.S.1961, § 122. Plaintiff argues it purchased the note within three days of execution, and was advised by defendants part consideration was merchan-

dise purchased and part the executory contract created by the Owner's Participation Agreement executed contemporaneously, but which was an entirely separate instrument. Plaintiff then says at the time of purchase and assignment of the "NOTE" the Participation Agreement had not been breached, hence no notice of any infirmity in the instrument could have been brought home to plaintiff. Plaintiff concludes that where an executory contract to be performed in the future is consideration for a negotiable instrument and no breach has occurred at time the instrument is negotiated the purchaser is a holder in due course. Plaintiff cites and relies upon Producers Nat. Bank v. Elrod, 68 Okl. 248, 173 P. 659, L.R.A., 1918F, 1016, and Delk v. City Nat. Bank, 85 Okl. 238, 205 P. 753.

The Elrod case, supra, is based upon the premise that where an executory contract is consideration for a negotiable promissory note, the purchaser's knowledge of such transaction does not preclude the recovery by such purchaser in due course in the event of breach of the contract. The Delk case stands for the principle that suspicion of defect of title, or knowledge of circumstances which would incite suspicion or sufficient to put a prudent person upon inquiry, will not defeat title of a purchaser in due course for value before maturity. No need arises either to distinguish these cases, or discuss further the rules stated. Both decisions arose from circumstances clearly disclosing the instruments involved were negotiable instruments. This circumstance alone makes such decisions inapplicable to the present issue.

■ In Selected Investments Corp. v. Lester, Okl., 327 P.2d 668, syllabus 1, we held:

"An agreement evidencing a promise to pay money, but providing for the retention of title by the payee to the merchandise for which the contract of sale was given until full payment, is not regarded as a negotiable instrument and the assignee, who acquired title to such conditional sales contract, and seeks the enforcement thereof, stands in no better position than the dealer assignor, and the defenses available to the buyer payor and against the dealer assignor are available against the assignee."

Also see Sanco Finance Co., Inc. v. Neal, Okl., 387 P.2d 113; James Talcott, Inc. v. Finley, Okl., 389 P.2d 988.

■ The Conditional Sales Contract and "NOTE" must be considered one instrument, since admittedly not dismembered until after assignment to plaintiff. We note, however, the "NOTE" sued upon showed to be secured by a Conditional Sales Contract. On face of this record the rule expressed in Lester, supra, and other cases of similar import negate plaintiff's arguments relative to being a holder in due course.

■ Under the second contention plaintiff urges fraud is never presumed, and neither fraud nor misrepresentation inhered either in the "NOTE" or Owner's Participation Agreement. Defendant pled failure of consideration, and that the "NOTE" was part of the Conditional Sales Contract executed by reason of fraud and misrepresentation. No need exists to review the testimony at length. There was evidence to the effect plaintiff had positive knowledge of Superior's operations and, prior to taking the instrument by assignment, reassured defendants as to soundness of the referral plan despite defendants' statements concerning their inability to pay for the merchandise. Plaintiff relied entirely upon the "NOTE" and Owner's Participation Agreement to show good faith purchase before maturity. This evidence presented the issue of fraud and misrepresentation for the jury to determine. Conflicting evidence relative to validity of the "NOTE" sued upon presented a question of fact. Peoples Bank, etc. v. Haar, Okl., 421 P.2d 817. This issue was resolved in defendants' favor.

Judgment affirmed.

All Justices concur.