**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 21 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

EVELYN L. SCRIVNER, a/k/a Evelyn
Lee Switzer; EVELYN LEE
SWITZER, Trustee Under the Evelyn
Lee Switzer Living Trust Dated
September 15, 1995; GARY K.
SWITZER; and LARRY W.
SWITZER,

     Plaintiffs-Appellants/
     Cross-Appellees,

v.

SONAT EXPLORATION COMPANY,
a Delaware Corporation,

     Defendant-Appellee/
     Cross-Appellant.

Nos. 99-6308, 99-6336,
     99-6442, 00-6027

_____

A-CROSS RANCH LTD, an
Oklahoma Limited Partnership,

     Plaintiff-Appellee-Appellant,

v.

SONAT EXPLORATION COMPANY,
a Delaware Corporation,

     Defendant-Appellant-Appellee.

Nos. 99-6338, 99-6443,
     00-6026

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. Nos. 97-CV-708-C and 97-CV-710-C)**

---

Bradley D. Brickell of Mahaffey & Gore, P.C. (Andrew J. Waldron of Mahaffey & Gore, P.C.; H. Blanton Brown and Douglas D. Wilguess of H. Blanton Brown & Assoc., PC, with him on the briefs), Oklahoma City, Oklahoma, for Evelyn L. Scrivner, et al., and A-Cross Ranch Ltd.

Gary W. Davis (Paul D. Trimble with him on the briefs) of Crowe & Dunlevy, Oklahoma City, Oklahoma, for Sonat Exploration Company.

———————————————

Before **LUCERO**, **McKAY**, and **MURPHY**, Circuit Judges.

———————————————

**McKAY**, Circuit Judge.

———————————————

## I. Background

Plaintiffs Evelyn L. Scrivner, Gary K. Switzer, and Larry W. Switzer ("Scrivner") obtained oil and gas leases on a number of properties in Oklahoma. Later, Scrivner assigned those leases to others, including Defendant Sonat Exploration Company. As consideration for these assignments, Scrivner reserved an overriding royalty interest in said leases. On April 29, 1997, Scrivner brought this diversity action under Oklahoma law against Defendant, asserting claims of: (1) breach of covenant to market gas for the highest and best price; (2) equitable

accounting; and (3) breach of fiduciary duty. Plaintiff A-Cross Ranch Ltd. ("A-Cross") sued Defendant in the same court and under the same theories, so the district court consolidated the two suits for trial. On January 19, 1999, the day trial was to begin on both suits, the parties reached a settlement. The Settlement Agreement required Defendant to assign to Plaintiffs additional royalty interests in "the leasehold estate created by the oil and gas leases executed by the Plaintiffs and their predecessors in interest covering the lands described in Exhibits 1 and 2." (App. at 44). In exchange, Plaintiffs moved to dismiss with prejudice the two cases at bar and a separate suit pending against Defendant. Following the dismissals, the district court retained its jurisdiction to monitor the parties' consummation of the Agreement.

On February 15, 1999, Plaintiffs rejected Defendant's attempted assignments as noncompliant with the terms of the Agreement. When Defendant refused to alter the assignments, Plaintiffs filed an Emergency Motion to Enforce Settlement Agreement. Defendant responded with its Objection to Plaintiffs' Motion to Enforce Settlement and Cross-Motion to Enforce Settlement Agreement or, Alternatively, to Vacate. On July 20, 1999, the court denied Plaintiffs' Motion, granted Defendant's Cross-Motion without a hearing, and ordered Defendant to proffer the assignments in the forms Defendant had prepared.

On November 18, 1999, the court granted Defendant's Application for

Attorney's Fees under the provisions of the Agreement without specifying a final amount. Plaintiffs appealed that Order on December 2, 1999. See Scrivner v. Sonat Exploration Co., No. 99-6442 (10th Cir. filed December 2, 1999); A-Cross Ranch v. Sonat Exploration Co., No. 99-6443 (10th Cir. filed December 2, 1999). The court clarified the amount of attorney fees in an order filed on December 22, 1999, which Plaintiffs also appealed. See Scrivner v. Sonat Exploration Co., No. 00-6027 (10th Cir. filed January 12, 2000); A-Cross Ranch v. Sonat Exploration Co., No. 00-6026 (10th Cir. filed January 12, 2000).

We made two jurisdictional inquiries. First, we asked whether our exercise of jurisdiction was premature in light of the district court's initially incomplete attorney fee award. However, the court's subsequent order clarifying the amount allays any concerns regarding appealable finality. (App. at 391). We thus dismiss appeals Nos. 99-6442 and 99-6443 and find jurisdiction under 28 U.S.C. § 1291 for Nos. 00-6026 and 00-6027. Second, we questioned our jurisdiction on the merits, since the district court retained jurisdiction over the enforcement of the Settlement Agreement. However, while the district court retained jurisdiction over the original actions until the Agreement was consummated, the court finally resolved all issues before it in its order of July 20, 1999, and thus our jurisdiction is warranted under 12 U.S.C. § 1291 for appeals to that order.

On appeal, both Scrivner and A-Cross challenge the district court's ruling

-4-

on their Motion to Enforce and the award of attorney fees. However, because A-Cross's appeal on the Motion to Enforce was not timely, we will only consider Scrivner's appeal on the merits before evaluating the appeals of both Plaintiffs on the attorney fee award. [1] Defendant appeals the court's ruling on his Alternative Motion to Vacate the Settlement Agreement, requesting rescission of the Agreement only if we hold Scrivner's interpretation to be correct.

## II. Settlement Agreement Interpretation

Both Scrivner and Defendant concur that the Settlement Agreement required Defendant to assign to Scrivner additional royalty interests in mineral

---

[1] A-Cross contends in its response to the jurisdictional show cause order that its notices of appeal are sufficient to be an appeal on the merits as well, since the final order on the merits was entered on November 18, 1999. However, its notice of appeal filed on December 2, 1999, clearly states that it is appealing the attorney fee order. Thus, the notice is insufficient to appeal the merits. See FED. R. APP. P. 3(c)(1)(B) (the notice of appeal must designate the judgment or order being appealed); Cunico v. Pueblo Sch. Dist. No. 60, 917 F.2d 431, 444 (10th Cir. 1990) ("Our appellate review is limited to final judgments or parts thereof that are designated in the notice of appeal.")

In its notice of appeal filed on January 12, 2000, A-Cross attempts to incorporate the order on the merits entered on November 18. However, the final order was actually entered on July 20, 1999. In any event, the notice is late. Even if the time to appeal did not begin to run until November 18, the notice of appeal was not filed until January 12. The pending attorney fee matter did not toll the time to file an appeal on the merits. See Utah Women's Clinic, Inc. v. Leavitt, 75 F.3d 564, 567 (10th Cir. 1995) (noting that the Supreme Court in Budinich v. Becton Dickinson & Co., 486 U.S. 196, 202 (1988), "adopted a 'bright line rule' holding 'that an unresolved issue of attorney's fees for the litigation in question does not prevent the judgment on the merits from being final'"), cert. denied, 518 U.S. 1019 (1996).

-5-

leases. Both agree that the assignments were "to be the equivalent of raising the revenue interest of Scrivner, et al. 4% . . . so that if the royalty interest of Scrivner, et al. under a lease was 12.5% then its royalty interest will be increased to 16.5%." App. at 45. The two differ, however, on the question: four percent _of what_? Scrivner contended that the Agreement required a four percent increase in Scrivner's royalty interest in the leases on all of the properties referenced in the Agreement. Defendant argued that it only had to assign a four percent royalty increase attributable to the leases that it owned, which included only portions of the Scrivner properties referenced in the Agreement. The district court held that the term "overriding royalty interest," which was used repeatedly to describe the interest to be assigned by Defendant, had a specific meaning in the oil and gas industry: an interest carved out of the working interest of a mineral lease. It followed, the court reasoned, that one interest carved out of another cannot exceed the original, and thus the parties could not have intended that Defendant carve out portions of leases that it did not own to give to Scrivner. In addition, the court noted that the "Agreement does not state that the overrides are to be computed based on the 'original leases,'" but from "'the leasehold estate created by the oil and gas leases _executed by the Plaintiffs_ and their predecessors in interest _covering the lands described_ in Exhibits 1 and 2.'" App. at 192 (quoting Settlement Agreement, App. at 44). Thus, the court concluded, the Agreement

-6-

indicates the parties' intent to assign Scrivner additional royalty interests in the referenced oil and gas leases that were owned by Defendant.

We review the district court's interpretation of the settlement agreement de novo. See Valley Nat'l Bank v. Abdnor, 918 F.2d 128, 130 (10th Cir. 1990). Under Oklahoma law, courts interpreting a contract must consider the entire agreement "so as to give effect to every part, if reasonably practicable." OKLA. STAT. tit. 15, § 157. "If the language of a contract is clear and without ambiguity, the Court is to interpret it as a matter of law. Similarly, the existence of an ambiguity is a decision to be made by the Court." Corbett v. Combined Communications Corp., 654 P.2d 616, 617 (Okla. 1982) (citation omitted). In addition, "[i]f a contract be ambiguous in its terms, the court should examine the entire contract for the purpose of declaring the meaning and intentions of the parties as expressed by the entire contract." Standard Accidental Ins. Co. v. Goldberg, 250 P. 892, 893 (Okla. 1926). If the meaning of the contract is "apparent on the face of the instrument," then "no extraneous evidence is proper to give a different construction." James Talcott, Inc. v. Finley, 389 P.2d 988, 993 (Okla. 1964). Finally, "[t]echnical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense." OKLA STAT. tit. 15, § 161 (emphasis added).

In this case, the court correctly noted the use of the term "override" and its

usual interpretation in the industry. However, the court misconstrued the use of that term in conjunction with the remainder of the contract. The Agreement states that Defendant is to assign to Plaintiffs an interest in "the leasehold estate created by the oil and gas leases executed by the Plaintiffs and their predecessors in interest covering the lands described in Exhibits 1 and 2." (App. at 44) (emphasis added). In further describing the assignment, the Agreement states that it will be "the equivalent of raising the revenue interests of Scrivner, et. al. 4% under each lease its minerals are subject to ." (App. at 45) (emphasis added). Nowhere is the increase described as a portion of Defendant's interests; in fact, the Agreement makes it clear that it is Scrivner's interests that will increase under Scrivner's leases on the referenced wells. In addition, the Agreement specifically references its Exhibit 2, which lists not only eleven of the thirteen Scrivner leases owned by Defendant, but six additional Scrivner leases as well. The use of the term "override" implies a carveout, but the parties here expressed an intention to carve a portion out of the royalties derived under the referenced Scrivner wells, not those of Defendant.

It is not surprising that the unusual nature of this carveout was confusing to the district court. Even Defendant concedes in its brief that it "is required to deliver . . . additional interests in the form of an override calculated as if the face of the Scrivner Group's leases had a 16.5 percent royalty percentage." (Ans. Br.

at 11) (emphasis added). Although unusual—perhaps due to the last minute nature of its preparation—the Agreement is clear that the overriding royalty Defendant is to provide is based on the Scrivner leases referenced in the exhibit.

Nevertheless, Defendant contends and the district court held that Defendant could not have agreed to convey something it did not own. This is not a correct statement of law. Absent illegality, parties may contract as they see fit, even promising to convey items that are not in their possession or control.[2] In addition, immediately following the above-cited conveyance language, the parties specifically provided an appraisal procedure to provide Scrivner with an equivalent value for the assignments if Defendant was unable to convey them:

---

[2] See The Harriman, 76 U.S. (9 Wallace) 161, 172 (1869) ("If a condition be to do a thing which is impossible . . . it is void; but if it be to do a thing which is only improbable or absurd, or that a thing shall happen which is beyond the reach of human power, as that it will rain to-morrow, the contract will be upheld and enforced."); Bonner v. Okla. Rock Corp., 863 P.2d 1176, 1183 (Okla. 1993) ("Absent illegality, parties are free to bargain as they see fit; a court may neither make a new contract to benefit a party nor rewrite the existing one."); Barnes v. Helfenbein, 548 P.2d 1014, 1021 (Okla. 1976) ("Courts are concerned only with the legality of the contract. The fairness or unfairness, folly or wisdom, or inequality of contracts are questions exclusively within the rights of the parties to adjust at the time the contract is made."); Davon Drilling Co. v. Ginder, 467 P.2d 470, 473 (Okla. 1970) ("Contracts entered into by parties will be enforced, if within the law, although they may contain harsh terms."); Commerce Acceptance Co. v. Campbell, 368 P.2d 496, 498 (Okla. 1962) ("It is the duty of the court to enforce valid contracts voluntarily entered into, in the absence of fraud or mistake, and the courts have no authority to relieve parties of their solemn obligations, assumed under such contracts."); Kendall v. Hastings, 198 P.2d 998, 1000 (Okla. 1948) (vendors may not only contract to sell land they do not yet own, they may maintain an action for damages for a breach by the purchaser if they were able to make good title at the time stipulated).

-9-

> Should the Defendant determine that it is unable or unwilling to convey said interest pursuant to Paragraph 4A and 4B above it will notify Plaintiffs' attorneys of record by certified mail on or before the date specified in Paragraph G, and thereby effectuate the following procedure:
>
> 1. Within five (5) business days of the Plaintiffs' receipt of Notice of the Defendant's inability to convey, the Plaintiffs will select an appraiser to assist in a valuation of said additional royalty above described.

(App. at 45) (emphasis added). The Agreement proceeds to describe at length the method for selecting appraisers, transferring funds to Scrivner, accruing interest on late payments, etc. Thus, the possibility that Defendant would be unable to make the required conveyances was provided for in some detail. If the parties had known that Defendant would be able to transfer interests under all of the leases, then there would have been little purpose in outlining a detailed plan for transferring the equivalent value in lieu thereof.

Oklahoma statutes provide three relevant canons for the interpretation of the Settlement Agreement. First, "[a] contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful." OKLA. STAT. tit. 15, § 152. Second, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." OKLA. STAT. tit. 15, § 154. Third, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." OKLA. STAT. tit.

-10-

15, § 155. Examining the Agreement to discern the parties' intent at the time of contracting, we conclude that the Agreement explicitly requires Defendant to increase Scrivner's royalty interests under each lease Scrivner's minerals are subject to, as referenced in Exhibit 2, by four percent or the appraised equivalent thereof. Thus, we reverse the decision of the district court rejecting this interpretation. Because we conclude that the Agreement in its entirety is not ambiguous, we decline to consider the parties' extrinsic evidence regarding the formation of the Agreement. [3]

### III. Unilateral Mistake

Defendant protests, however, that our interpretation of the Agreement is not what Defendant intended, and so the parties did not have a sufficient "meeting of the minds" essential to valid contract formation. [4] Renewing his alternative

---

[3] Scrivner has presented excerpts from the trial transcript that assist in justifying its position; however, our holding that the contract is unambiguous prevents a review of these arguments. See James Talcott, Inc., 389 P.2d at 993.

[4] Scrivner objects to our consideration of Defendant's rescission request, noting that the district court did not specifically rule on Defendant's alternative motion to rescind the Settlement Agreement. (Aplt. Rep. Br. at 19-20). While the court did not enter a separate judgment denying Defendant's motion to rescind, we take jurisdiction over the issue because the court's decision to accept the Agreement under Defendant's interpretation was final and required rejecting the rescission request. See DeBoard v. Sunshine Mining & Ref. Co., 208 F.3d 1228, 1236-37 (10th Cir. 2000) (holding that, because district court did not enter separate judgment denying cross-motion for attorney fees, judgment was never entered in the record for rule 58 and thirty-day period never began to run, but taking jurisdiction over the issue because the court's decision was final).

-11-

argument, Defendant asks that we rescind the Agreement for lack of mutual assent. It is true that "a mistake on one side, if it is material, may be grounds for rescinding and cancellation by a court of equity." O'Neal v. Harper, 75 P.2d 879, 882 (Okla. 1937). However, Oklahoma, like the majority of states, does not permit the rescission of a contract for unilateral mistake unless the other party was aware of the mistaken party's error:

> A party to a contract may rescind the same in the following cases only:
>
> 1. If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

OKLA STAT. tit. 15, § 233 (emphasis added). In explaining this principle, Oklahoma courts have noted : "'[T]he modern tendency is to recognize unilateral mistake as a ground for rescission of an unexecuted contract . . . [but] the principle is applied when the mistake was known to the other party to the transaction.'" First Fed. Sav. & Loan Ass'n v. Hutchinson, 591 P.2d 1189, 1191 (Okla. Ct. App. 1978) (quoting United States v. Jones, 176 F.2d 278, 285 (9th Cir. 1949)); Mobil Oil Corp. v. Flag-Redfern Oil Co., 522 P.2d 651, 655 (Okla. Ct. App. 1973) (same). Defendant presents no evidence that Scrivner knew about Defendant's mistaken interpretation of the Agreement prior to receiving Defendant's fractional assignments.

-12-

In addition, rescission would require the rescinding party to "restore to the other party everything of value which he has received from him under the contract."  OKLA STAT. tit. 15, § 235.  As specific consideration for settling its claims with Defendant under the Settlement Agreement, Scrivner provided Defendant with a motion to dismiss with prejudice a separate case,        Dunstan v. Sonat Exploration Co.   , No. 91399 (Okla. filed June 5, 1998).  Defendant can no longer restore that consideration to Scrivner.  For both of these reasons, we reject rescission as an alternative remedy to the parties' dispute.

The district court awarded Defendant attorney fees for prevailing against both Scrivner and A-Cross in the enforcement action, as allowed by the Settlement Agreement.  Because we hold that Defendant does not prevail in this action, we reverse the court's award of attorney fees to Defendant as to both Scrivner and A-Cross.

In its Reply Brief, Scrivner alleges for the first time that Defendant has not performed other obligations under the Agreement.  Scrivner requests that we remand these matters back to the district court with instructions to enforce all remaining unperformed settlement obligations.  (Aplt. Rep. Br. at 12-14).  We decline to consider these new allegations.  "Issues not raised in the opening brief are deemed abandoned or waived."     Coleman v. B-G Maint. Mgmt.    , 108 F.3d 1199, 1205 (10th Cir. 1997).

-13-

Accordingly, we **REVERSE** and **REMAND** this action to the district court for enforcement of the Settlement Agreement, dismissal of the attorney fee awards, and other proceedings not inconsistent with this opinion.