SCOTT *et al.* v. SIGNAL OIL CO.

No. 3876.    Opinion Filed December 3, 1912.

(128 Pac. 694.)

1. ESTOPPEL—Equitable Estoppel—Grounds. A person may waive a right by conduct or acts which indicate an intention to relinquish it, or by such failure to insist upon it that the party is estopped to afterwards set it up against his adversary.

2. INDIANS — Departmental Lease — Assignment — Consent of Lessor. A departmental oil and gas lease was executed by a citizen of the Cherokee Nation to S., who thereafter assigned the same with the approval of the Secretary of the Interior, but without the consent of the lessor, to the Signal Oil Company, who immediately entered into possession of the leased premises and in due time, after the expenditure of a considerable sum of money, developed a producing gas well. The lessor was duly notified of the assignment of said lease and the approval thereof by the Secretary of the Interior and thereafter, for a period of several years, accepted without question the rentals and royalties due her by the terms of said lease. Held, that the lessor by her conduct waived her rights under the clause of the lease which provides: ''And it is mutually understood and agreed that no sub-lease, assignment or transfer of this lease, or of any interest therein or thereunder, can be directly or indirectly made without the written consent thereto of the lessor and the Secretary of the Interior first had and obtained, and any such assignment or transfer made or attempted without such consent shall be void.''

3. MINES AND MINERALS—Leases—Registration. The recordation laws of the state of Arkansas extended to and put in force in the Indian Territory do not require the assignment of an oil and gas lease executed by a citizen of the Cherokee Nation prior to statehood to be recorded in order to give it validity.

(Syllabus by the Court.)

*Error from District Court, Washington County;*
*R. H. Hudson, Judge.*

Action by the Signal Oil Company against Roxie A. Scott and another. Judgment for plaintiff, and defendants bring error. Affirmed.

*Norman Barker,* for plaintiffs in error.

*Rowland & Talbott* and *Jas. A. Veasey,* for defendant in error.

KANE, J.   This was a suit commenced by the defendant in error, plaintiff below, against the plaintiffs in error, defendants below, to enjoin them from interfering with certain rights which it claimed in a 40-acre tract of land under a departmental oil and gas lease.   Upon trial to the court, a permanent order of injunction was decreed, as prayed for by the plaintiff, to reverse which this proceeding in error was commenced.   The land in question is the allotment of Roxie A. Scott, a Cherokee citizen. The original lease was executed by her in favor of Charles B. Shaffer, and approved by the Secretary of the Interior on April 15, 1907.   On the 3d day of May, 1907, Shaffer assigned the lease to the Signal Oil Company, which assignment was approved by the Secretary of the Interior on the 6th day of September, 1907.   On March 7, 1911, the plaintiff in error Horton procured an oil and gas lease for the same premises from Roxie Scott under which he attempted to take possession, whereupon this suit was commenced. .

The plaintiffs in error contend that the assignment of the lease by Shaffer to the oil company is void, because Roxie A. Scott did not give her written consent thereto, as required by a certain clause of the lease, which provides:

"And it is mutually understood and agreed that no sublease, assignment or transfer of this lease, or of any interest therein or thereunder, can be directly or indirectly made without the written consent thereto of the lessor and the Secretary of the Interior first had and obtained, and any such assignment or transfer made or attempted without such consent shall be void."

It is admitted that the assignment was made without the written consent of the lessor, and, if it were not for other circumstances which will be noticed hereafter, the case would be controlled by the cases of *Midland Oil Co. v. Turner,* 179 Fed.

74, 102 C. C. A. 368, and *Turner v. Seep et al.* (C. C.) 167 Fed. 646, wherein it was held that:

"Where an oil and gas mining lease executed by an Indian in Indian Territory on a form prescribed by the Interior Department expressly provided that no sublease or assignment of any interest therein could be made without the written consent of the lessor, and the Secretary of the Interior, and any attempted assignment or transfer without such consent should be void, a subsequent regulation of the department which contained no requirement of the lessor's consent in such cases could not validate an assignment of such lease made without the lessor's consent."

But in the instant case plaintiff alleged that, under and in pursuance of the privileges granted by the terms of said lease and the said assignment, the plaintiff has entered upon the above-described land and drilled one producing gas well, which said gas well has been utilized for a period of ——— years prior to the filing of this suit; that the plaintiff has fully complied with all of the terms and conditions in said lease contained relative to the payment of advance royalties and annual rentals, and also has paid all gas rentals provided by the terms of said lease accruing on account of the gas well above referred to; that the defendant Roxie A. Scott has from time to time accepted advance royalties, annual rentals, and gas rentals that have accrued; and that said defendant at the time accepted said moneys with full knowledge of the ownership of said lease by the plaintiff and has thereby ratified, approved, and confirmed the assignment made by Charles B. Shaffer. To which the defendant answered that "she has never knowingly received or accepted any royalties from this plaintiff, but that on or about the 11th day of March, 1911, she received a check or voucher from the United States Indian agent for back royalty due upon said gas well of $105.55." To which allegation the Signal Oil Company replied as follows:

"That said Roxie A. Scott was duly notified of the assignment of said lease by said Shaffer to this plaintiff prior to the approval of the same by the Secretary of the Interior, and that thereafter notice of the approval of said assignment to the plaintiff was sent to said Roxie A. Scott by the Indian agent, and

that thereafter said Roxie A. Scott accepted the payment of certain gas royalties due under said lease by reason of the well drilled in on said land by the plaintiff, with knowledge of the fact that said royalties were paid by the plaintiff, as a result of which the defendant waived that provision of the lease requiring her consent as set out in the third paragraph of defendant's answer, and is estopped to declare a forfeiture of said lease for a violation of said term of said lease."

Upon the issue of estoppel the evidence was conflicting, but there was evidence reasonably tending to support all the allegations contained in the part of plaintiff's reply above set out. The court, after a full consideration of the evidence, found the issues in favor of the plaintiff. If, therefore, the facts alleged are sufficient to constitute an estoppel, the judgment of the court below must be affirmed, for there is no principle of law more firmly settled in this jurisdiction than that this court will not set aside the findings of the court below on a question of fact, where the evidence reasonably tends to support it. The evidence reasonably tends to show: That the lease was assigned on the 3d day of May, 1907, and that the assignment was approved by the Secretary of the Interior on the 6th day of September of the same year. That on the 17th day of February, 1908, D. H. Kelsey, the Indian agent, notified the lessor of said assignment through the United States mail by inclosing to her a triplicate copy of the approved assignment to the Signal Oil Company of the lease executed by her in favor of Charles B. Shaffer. That thereafter the lessor accepted rentals and royalties from the assignee in accordance with the terms of the lease, as follows: March 14, 1908, $12; June 10, 1908, rental, $40; January 13, 1909, royalties, $26; September 8, 1909, royalties, $50; November 16, 1911, royalties, $105.55. It also appears that the assignee, on the faith of the approval of its assignment, in addition to the payment of rentals and royalties above set out, drilled a gas well on the land in question, out of which the royalties accrued.

It seems to us that the conduct of the lessor was so inconsistent with a purpose to stand upon her rights under the assignment clause of the lease that there is no room for a reasonable inference to the contrary.

"The more usual manner of waiving a right is by conduct or acts which indicate an intention to relinquish the right, or by such failure to insist upon it that the party is estopped to afterward set it up against his adversary." (40 Cyc. 265, and cases cited.)

This is a clear case for the application of the doctrine of waiver by acts or conduct, and the court below very properly gave the plaintiff the benefit of the rule.

In a reply brief counsel for plaintiffs in error cite *Shulthis v. McDougal et al.,* 170 Fed. 529, 95 C. C. A. 615, as authority for the proposition "that the assignment held by the Signal Oil Company, defendant in error, if not recorded and unknown to her, was absolutely null and void, and if the same was known to her and was unknown to G. E. Horton, one of the plaintiffs in error, at the time he leased the property in question from Mrs. Scott, would convey him a good and sufficient title thereto and right to operate thereon and thereunder." We have examined that case and find it not to. be in point. The recordation laws of the state of Arkansas extended to and put in force in the Indian Territory, there construed, do not require the assignment of an oil and gas lease executed by a citizen of the Cherokee Nation prior to statehood to be recorded in order to give it validity.

There are other assignments of error based upon the action of the court in rejecting and admitting evidence over the objections of the defendants. By section 5680, Comp. Laws 1909, "the court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reserved (reversed) or affected by reason of such error or defect." It is not apparent that any substantial rights of the defendants were prejudicially affected by the rulings complained of, and therefore, even if they were erroneous, this court is required to disregard them.

"The rule is well established that the improper admission or rejection of evidence, if not prejudicial to the party complaining, is not ground for reversal." (*Mullen v. Thaxton,* 24 Okla. 643, 104 Pac. 359.)

On the whole, we are satisfied from the record before us that the court below committed no error that justifies a reversal of the judgment rendered. It is therefore affirmed.

All the Justices concur.