A. R. STEIGER and Marie N. Steiger, Plaintiffs in Error,

v.

COMMERCE ACCEPTANCE OF OKLAHOMA CITY, INC., a corporation, Defendant in Error.

No. 41271.

Supreme Court of Oklahoma.
April 29, 1969.
Rehearing Denied June 10, 1969.

Baker H. Melone, Melvin J. Spencer, James A. Jennings, of Miller, Melone, Wilson, Adams & Spencer, Oklahoma City, for plaintiffs in error.

Roy C. Lytle, William D. Curlee, James C. Chandler, Lytle, Soule & Emery, Oklahoma City, for defendant in error.

BERRY, Vice Chief Justice.

Plaintiffs in error were defendants in an action brought by Commerce Acceptance of Oklahoma City, Inc., designated Commerce, to recover money judgment allegedly due under a written guaranty. The trial court sustained Commerce's demurrer and motion for directed verdict at close of the evidence. This appeal presents only the question of correctness of the trial court's action.

Commerce is a finance corporation engaged in the business of purchasing negotiable, commercial instruments supported by customary security agreements. Superior Products, Inc. was the Steigers' family owned corporation engaged solely in sale of household appliances. Superior's operations were conducted exclusively by means of a sales program known as "referral selling." Under this plan prospective purchasers signed contracts but received no merchandise until a credit application was approved. During the period involved Superior's sales were so extensive as to necessitate considerable credit financing, theretofore not fully available.

April 7, 1960, Commerce and Superior concluded a Dealer Agreement contract under which, so far as pertinent here, Commerce agreed to purchase Superior's commercially acceptable paper endorsed with recourse, unconditionally guaranteeing payment by purchaser-debtors. In event of default, return, rejection or repossession of merchandise, Superior agreed to pay the balance due, costs and expenses upon demand. Contemporaneously, Steiger and wife individually executed a Guaranty and Waiver, unconditionally guaranteeing Su-

perior's performance of all obligations under the Dealer Agreement.

Under Superior's operation salesmen called upon named prospects who were induced to sign notes, conditional sales contracts and credit applications without any merchandise being delivered. Each day Steiger, his wife, or their son employed by Superior, would take these papers to Commerce, whose employees then would conduct a credit investigation of the prospective debtor. Within a short time, usually the following day, Commerce would notify Superior which applicants were acceptable credit risks, and merchandise then would be delivered. Checks issued by Commerce for amount of accepted notes, less 10% "holdback", then would be picked up by Steiger, and by Mrs. Steiger after he became ill and unable to transact business. After inauguration of the Dealer Agreement most of Superior's commercial paper was sold to Commerce, although arrangements had been made with other sources of finance.

Although evidence is indefinite, the record indicates Superior was not doing any great amount of business prior to execution of the agreement with Commerce on April 7, 1960. The parties stipulated, however, that from May 1960 through January 27, 1961, Commerce purchased $441,755.00 commercial paper from Superior products. Of this total $159,007.00 was purchased between May and October, prior to Romontio becoming manager and gaining full control of Superior's operations. Also this was prior to the side agreement with Commerce's manager, to act as a collector for Superior. The aggregate amount of paper purchased prior to Romontio's employment directly contradicts testimony that Superior did little business and was losing money before he became manager. These matters justify comment later.

Commerce brought suit upon the guaranty, alleging Superior's breach of the Dealer Agreement by failure to pay upon demand the balance of approximately $130,-000.00 remaining due on 185 defaulted promissory notes. In the same action Commerce sought judgment against Steigers upon their guaranty, and other relief not important to the issue on appeal.

Defendants' answers admitted execution of the Dealer Agreement and Guaranty. Defendants asserted numerous affirmative defenses and cross-petitioned for actual and punitive damages alleged to have resulted from variety of fraudulent acts committed by plaintiff and Superior. The affirmative defenses were abandoned at the trial, except for two urged on appeal: (1) failure of consideration because of Commerce's failure to fulfill alleged "contemporaneous oral conditions precedent to liability"; (2) fraud in the inducement of the contract by oral representations plaintiff never intended to perform. Each defense is a separate approach based upon the same factual situation, since alleged contemporaneous oral conditions, precedent to liability under the first asserted defense, likewise constitute the alleged fraudulent representations relied upon as grounds for the second defense. Allegations as to fraudulent representations were greatly enlarged by amendment permitted immediately before trial.

Defendants' amended answer alleged one Bizzell, agent and manager for Commerce in Oklahoma City, entered into a scheme with Superior's manager (Romontio) for purchase of obligations from Superior without proper approval of credit and credit investigation as required by the original understanding and agreement between Commerce and defendants. Further, defendants' manager had agreed, without Steigers' knowledge, approval or consent, to pay $50.00 weekly to Bizzell, who proceeded to approve purchase of Superior's obligations without regard for proper credit considerations and thus exposed defendants to liability upon the guaranty. After alleging a further scheme between the same parties, to defraud defendants by excessive purchases of paper during December 1960, defendants asserted perpetration of fraud and deceit resulted in total failure of consideration for the original guaranty and waiver.

During presentation of defendants' evidence Steiger testified that prior to execution of the guaranty Bizzell had promised Commerce would buy only "gilt edged" paper and there would be no bad paper; defendants would be in no danger from paper being assigned with recourse, because recourse would be exercised only when the creditor could not or did not pay. In event standard collection procedures failed, Commerce would turn collection over to its attorney to bring suit and recover such portion of the account as possible. Defendants were not to be liable upon personal guaranty until case decided, and then only the lost or uncollected portion would be charged back to Superior and become defendants' liability as guarantor.

At close of defendants' evidence plaintiff demurred and moved for directed verdict as to the cause of action based upon the guaranty, upon grounds any attempt to vary terms of the original guaranty violated the parol evidence rule by reason of statutory inhibitions, and because there was no evidence of fraud and inducement in execution of the contract.

Defendants immediately requested, and were granted leave to amend their answer to conform to the proof, " * * * including therein all of the evidence as to misrepresentation made by Bill Bizzell on April 6, 1960, immediately prior to the execution of the guaranty agreement on the latter date." This permitted change in the pleadings injected the affirmative defensive allegation that, as an inducement to sign the guaranty, Bizzell fraudulently represented Commerce would bring suit upon defaulted notes before these obligations would be recoursed to Superior with demand for payment.

Defendants then were granted leave to reopen their case in order to evoke evidence from plaintiff's witnesses. This testimony was directed toward showing statements made by Bizzell were made with intention of defrauding defendants and persuading them to execute the guaranty, and were made intentionally or with reckless disregard of trust placed in Bizzell by defendants.

Plaintiff then requested leave to amend the reply to defendants' answer as amended during trial, to allege defendants' estoppel to plead, allege or prove any variation in the representations purportedly made by Bizzell to defendants on April 6, 1960. The motion was granted over defendants' objection the issues would be changed by such amendment. This request was based upon evidence showing defendants' course of conduct in accepting recourse paper, payment and discharge of the obligations of endorser and guarantor. And, because of defendants' conduct, plaintiff continued to purchase commercial paper pursuant to the contract believing same was in force and without objection of any nature from defendants, particularly in view of their conduct in paying the recoursed paper. Further, defendants' course of conduct was such as to estop them from asserting fraud in inducement when (April 7, 1960) contract of guaranty was executed by defendants as individuals.

Recitation above of amendments to pleadings in order to conform to defendants' evidence, reflects the additional element of defense thus injected. At the same time this clearly reveals necessity for plaintiff's amendment to the reply. Originally by way of defense against liability defendants asserted: (1) Commerce was to approve credit prior to sale and only upon complete credit investigation and report; (2) Paper approved for purchase would be assigned only upon Steigers' signatures; (3) Commerce's full resources would be utilized in standard collection procedures upon delinquent paper.

Admission during trial that all paper had been assigned upon approved signatures removed the second defense from consideration. However, as a result of Steiger's testimony, the two remaining defenses were greatly amplified. The defense raised under number 1 was enlarged to include an alleged representation relative to Commerce's affirmative agreement, or induce-

ment, to buy nothing but "gilt edged" paper. The second defense was based originally upon a claim full resources would be used in standard collection procedures. This was amplified to include the claim, when other collection procedures failed, Commerce also was to exhaust legal remedies before recoursing paper to Superior or holding Steigers as guarantors. These matters provide the basis for defendants' claim of fraud in relation to three separate matters surrounding these parties' relationship, now urged separately as grounds for reversal.

Before examining contentions and supporting argument, attention should be directed to settled legal principles which must be applied as controlling in cases such as this.

■■ First, in passing upon a demurrer to the evidence or motion for directed verdict, the trial court must accept as true all evidence, and reasonable inferences therefrom favorable to the party against whom directed, while disregarding conflicting evidence favorable to the moving party. Haynie v. Haynie, Okl., 426 P.2d 717; Scovil v. Chilcoat, Okl., 424 P.2d 87. But, a demurrer or motion for directed verdict does not admit conclusions of fact or law unattended by supporting allegations, and only admits those facts which are well pled, and inferences and conclusions reasonably and logically drawn therefrom. Weston v. Acme Tool Co., Inc., Okl., 441 P.2d 959.

■ Secondly, fraud never is presumed, but must be affirmatively alleged and proved by clear, unequivocal and competent evidence. Brooks v. LeGrand Okl., 435 P.2d 142; James Talcott, Inc. v. Finley, Okl., 389 P.2d 988. The essential elements requisite to constitute actionable fraud need not be reiterated, other than to observe the declared necessity for every element to be present, and that absence of any one is fatal to recovery. See syllabus in Ramsey v. Fowler, Okl., 308 P.2d 654. As to weight accorded testimony of certain witnesses under particular circumstances see Alexander v. Gee, Okl., 352 P.2d 915.

■ Third, to render nonperformance of a promise to be performed in the future fraudulent, the promise must be accompanied by an intent not to perform. Downtown Chevrolet Co. v. Niccum, 180 Okl. 616, 71 P.2d 957; Scrivner v. Scrivner, 207 Okl. 225, 248 P.2d 1045; Holland v. Perrault Bros., Inc., Okl., 311 P.2d 795.

Fourth, consideration of extent and effect of the written guaranty must be within limitations prescribed by specific statutory provisions contained in 15 O.S.1961, § 137, relating to execution of contracts and § 331 relating to guaranty.

■ First considered is the defense relating to alleged fraud in the inducement of the contract, assertedly arising from reliance upon Bizzell's representations. As noted, the original allegation relative to Commerce's credit investigation and report prior to approval of a debtor's obligation, was enlarged to include representations only "gilt edged" paper would be approved. The original allegation asserted Commerce's representation full resources would be utilized in standard collection procedure on delinquent paper. This allegation was enlarged to assert fraud resulting from breach of the agreement to bring suit on delinquent paper before recoursing paper to Superior or holding defendants as guarantors, only for unrecovered amounts.

There was no evidence tending to show Commerce ever failed to make the required credit investigation and report. Neither was there any evidence to support the conclusion Commerce, or Bizzell, intended to buy any type of paper other than "gilt edged" when the contract was being discussed in April 1960. Evidence tending to show Commerce's purchase of poor "border line" paper covers only that period (beginning September 10, 1960) following Superior's employment of Bizzell as collector. Viewed most favorably, the evidence fails to prove those allegations concerning credit to be extended and quality of paper to be bought. Moreover, defendants own evidence establishes Commerce's full performance between April 7th and September 10,

1960. And, defendants' evidence likewise shows this was during Steiger's active management and prior to Romontio taking over management of the business. Considered most favorably to defendants, it is clear evidence of alleged fraud in inducement, based upon alleged representations concerning handling of credit, falls within the rule stated in the Niccum and Scrivner cases, supra.

■ Of equal concern is the issue of fraud allegedly engendered by Bizzell's misrepresentations. For present purposes we accept as true Steiger's testimony the guaranty would not have been executed except for misrepresentations that, other efforts failing, suits would be filed against delinquent debtors before the paper was recoursed or defendants called on as guarantors. The determinative question is whether, treating all the evidence as true, the record shows the Steigers wholly lacked knowledge Commerce was recoursing paper to Superior without first filing suit upon delinquent accounts.

Beginning in June Steiger was not actively managing the business because of ill health. While away from the business Steiger was kept informed of the business by daily reports from Mrs. Steiger, a son, and a son-in-law employed as bookkeeper at Superior. Mrs. Steiger continued working at Superior performing routine tasks, including signing checks, taking contracts to Commerce, and picking up checks issued by Commerce. During the summer the Steigers were troubled by reason of having to buy back recoursed paper. Upon Romontio taking over as manager, shortly after September 10th, Bizzell was hired to collect delinquent accounts for Superior. Mrs. Steiger knew of and agreed to his employment, drew Bizzell's salary checks, and understood his employment was to be kept secret from Commerce.

There was evidence it was not Commerce's policy to file suit in cases where there was a full recourse Dealer Agreement also supported by an unconditional guaranty such as that executed by defendants. There was uncontradicted evidence no suits had been filed on paper recoursed to Superior prior to September 1, 1960. However, for purposes of consideration here, Steigers' reliance upon misrepresentations relative to filing suits at the time of signing the guaranty must be accepted as fact. Commerce agrees in this, but urges Steigers thereafter became estopped to plead such defense, or waived any right to rely thereon, by failure to exercise the right to cancel the guaranty after they knew paper was being recoursed to Superior without suit being filed. This is urged upon the basis of equitable estoppel expressed in 28 Am.Jur.2d, Estoppel & Waiver § 57; Bowen v. Freeark, Okl., 370 P.2d 546. From this Commerce concludes Steigers' defense must fail because precluded from showing reliance upon the allegedly fraudulent misrepresentation, an essential element of the asserted fraud.

Correctness of the trial court's order and judgment primarily involves whether all evidence and reasonable inferences favorable to defendants would support a conclusion, or provide basis for reasonable inference, Steigers never had knowledge suits had not been filed upon paper recoursed to Superior after April 7, 1960. Of first concern is whether, despite admitted knowledge of recoursed contracts and Superior's hiring of a collector, it was reasonable to infer Steigers lacked knowledge paper was being returned without suit being filed.

The executed Dealer Agreement contained these provisions: (Note: The words "you" and "your" in the following quoted matter refers to Commerce, while "we" refers to Superior.)

"That collections from our debtors on all Accounts purchased by you hereunder shall be made in accordance with the first paragraph immediately following and marked 'Direct Collection' unless you shall indicate on the reverse side hereof, that collections shall be made in accordance with the second paragraph immediately following and marked 'Dealer Collection.'

" 'DIRECT COLLECTION' It is understood and agreed, except as herein otherwise provided, that you are to make collections of Accounts which you purchased from us. In connection with your making collections, we agree at your request, to assist you with making collections in special cases, adjusting Accounts, and/or repossessing merchandise covered thereby, all pursuant to your instructions. We agree to promptly forward to you any and all communications, inquiries or remittances which we may receive in reference to said accounts. It is understood and agreed, however, that we shall not solicit payments or do any other act or thing inconsistent with your ownership of said Accounts without written authorization from you."

A delinquent note would impart arrears in payment of the debt. Had Commerce filed suit upon delinquent accounts and failed to recover judgment the debtors would have been released from the obligation, and defendants' responsibility would have attached under their guaranty. Had Commerce sued and recovered judgment against the maker the cause of action upon the note would have been merged into the judgment. See generally 11 Am.Jur.2d, Bills & Notes § 922. In this situation there would be no delinquent account, but a defaulted obligation evidenced by judgment for amount of obligation, or a deficiency after repossession and sale.

A further inquiry concerns whether Steigers, knowing Superior had hired a collector of delinquent accounts, reasonably could infer the collector had been employed to perform collection work pursuant to collection procedures above quoted, rather than collecting defaulted notes upon which no suit had been filed.

Reference to the quoted language reflects Commerce was to make direct collection of all paper purchased from Superior. As part of the contractual provision governing collections, Superior agreed to assist with collections in special cases only upon Commerce's *request* and only pursuant to Commerce's instructions. Even more definitive was the closing sentence wherein Superior agreed " * * * not to solicit payments * * * of said Accounts without written authorization from you."

The written terms and requirements of the Dealer Agreement clearly removed any right or responsibility for collection of any accounts from Superior in absence of request by Commerce, and without written authorization. There is no pleading, and the evidence in no instance intimates, this provision of the agreement was waived by oral request, written authorization, or completed collections made by Superior and accepted by Commerce in abrogation of contract collection requirements.

The Dealer Agreement, providing for direct collections by Commerce, was in effect and binding upon the parties relative to the manner in which collections were to be handled. There is no suggestion defendants did not know and understand this provision. For this reason there was no evidentiary basis from which an inference could arise the collector (Bizzell), secretly hired and paid by Superior with defendants' knowledge, was acting solely for Commerce, rather than trying to collect delinquent paper recoursed to Superior without suit being filed. Without that inference there is no basis for further inferring defendants' complete lack of knowledge and understanding concerning the delinquent accounts recoursed to Superior.

It is settled that fraud may not be presumed, but must be shown by clear and satisfactory evidence. Western Star Mill, etc. v. Burns, Okl., 305 P.2d 564; James Talcott, Inc. v. Finley, supra. Necessarily defendants' affirmative defense of fraud in the inducement of the contract, based upon Bizzell's alleged misrepresentations prior to execution, was required to be established by clear and satisfactory evidence. This affirmative defense, tendered by amendment to conform to the proof, was injected solely upon basis of Steiger's testimony concerning alleged oral misrepresentations. Since all plaintiff's conflicting evidence is treated as withdrawn, the issue is deter-

minable only upon basis of the matters mentioned.

The real issue then becomes a question as to whether, assuming the truth of evidence as to Bizzell's misrepresentations, the evidence also clearly and satisfactorily established defendants' reliance upon such misrepresentations without knowledge as to condition of the delinquent paper. The necessity for inferring each fact upon which claimed lack of knowledge was based is pointed out. Both Bizzell and defendants' manager (Romontio) knew the recoursed paper had not been sued upon, since they handled original contracts and attempted to collect delinquencies. The evidentiary matters urged as establishing fraudulent inducement, lack of knowledge, and continued reliance thereon are inferential at best, and do not provide the clear, satisfactory evidence required to support defendants' claim. The court properly sustained plaintiff's motion.

The remaining issue involves correctness of the trial court's ruling defendants were estopped to assert fraud, by reason of subsequent conduct following discovery of the alleged fraud. Defendants contend estoppel never can be utilized as an instrument of fraud, and plaintiff's entire course of conduct was tainted with fraud engendered by acts of the agent-manager Bizzell, for whose fraudulent acts plaintiff must bear responsibility.

We are of the opinion the following text statement from 38 Am.Jur.2d, Guaranty § 57, pointed out by plaintiff, applies:

"Fraud cannot successfully be interposed as a defense in an action against a guarantor who, on discovering that he has been induced to execute the guaranty on the faith of the fraudulent representations of the creditor or his agent, has waived the fraud or become estopped as by not promptly repudiating the contract or by allowing the rights of innocent third persons to intervene."

Also see 38 C.J.S. Guaranty § 33.

When rendering judgment the trial court concluded defendants were estopped to assert a defense based upon alleged misrepresentations, having acquiesced in sale and repurchase of commercial paper for many months without complaint. Generally it is understood the terms "waiver" and "estoppel" are used interchangeably. See 31 C.J.S. Estoppel § 61, and footnote cases cited. In Bay Pet. Corp. v. May, Okl., 264 P.2d 734, we pointed out many rules of law apply equally to waiver and equitable estoppel, and delineated the distinguishing features.

For present purposes it is sufficient to observe the trial court's statement of reasons for the conclusion reached was sufficient to permit application of either term to the situation involved. In Scott v. Signal Oil Co., 35 Okl. 172, 128 P. 694, syllabus 1 states:

"A person may waive a right by conduct or acts which indicate an intention to relinquish it, or by such failure to insist upon it that the party is estopped to afterwards set it up against his adversary."

Also see Holcomb & Hoke Mfg. Co. v. Jones, 102 Okl. 175, 228 P. 968; James Talcott, Inc. v. Finley, supra.

The evidence upon which defendants relied as showing lack of knowledge of Commerce's breach of the alleged agreement, to bring suit before delinquent paper was recoursed to Superior, was not the clear, satisfactory and convincing evidence required. Defendants failed to establish the essential element of defense required under Ramsey v. Fowler, supra. The continuing course of conduct, following knowledge of breach of the alleged representations, either constituted waiver of defendants' rights, or worked an estoppel to rely upon the alleged fraud. As to ratification of unauthorized acts by acceptance and retention of benefits after knowledge, see Outboard Marine Center v. Little Glasses Corp., Okl., 338 P.2d 1101.

Since matters discussed above dispose of the basic questions, other contentions and arguments urged do not require discussion.

Judgment affirmed.

IRWIN, C. J., and DAVISON, BLACKBIRD, HODGES and LAVENDER, JJ., concur.

WILLIAMS, J., dissents.