Don L. DYCUS, Appellee,

v.

BELCO INDUSTRIES, INC., and Coronado Inn Limited, a limited partnership, Appellants.

No. 48834.

Court of Appeals of Oklahoma, Division No. 2.

Aug. 23, 1977.

Released for Publication by Order of Court of Appeals Sept. 15, 1977.

Stockwell & Pence, Norman, for appellee.

Luttrell, Pendarvis & Rawlinson, Norman, for appellants.

BRIGHTMIRE, Presiding Judge.

The general partner of a limited partnership sold all of its assets, retained all the proceeds and proceeded with dissolution of the entity. The limited partner requested an accounting and damages. The trial court awarded the limited partner damages. From that judgment both parties appeal.

I

The partnership, defendant Coronado Inn, Ltd., was formed in 1965 primarily for the purpose of purchasing, refurbishing, and operating a financially faltering downtown Norman, Oklahoma hotel called the Coronado Inn. Initially there were eleven limited partners and one general partner. Included among the limited partners were plaintiff Donald Dycus and defendant Belco Industries, Inc. (Belco). A few months after the company's creation, the original general partner resigned and transferred his interest and position to Belco. At various times over the years several limited partners assigned their interests to Belco, so that at the time of dissolution, there remained but one limited partner interest outstanding, that owned by Dycus.

During its seven-year life, the partnership business suffered from financial anemia. The hotel's propensity for losing money was so great that by 1972 general partner Belco had loaned the partnership more

than $241,000 simply to keep the operation alive.

In April 1972 Belco granted an option to purchase the hotel to one Earl Pedigo. Pedigo exercised the option and, without notice to or consent of Dycus, the disputed sale was consummated in December of that year. Belco decided that the sale proceeds should be paid to partnership creditors, and deeming itself to be such a creditor, it paid a large part of the money to itself in satisfaction of its operational advances. Dycus received nothing.

## II

May 22, 1973, Dycus filed this action against Belco and, by later amendment, against the partnership itself asking for an accounting and either for cancellation of the sale or alternatively for damages of $150,000 because of Belco's "unauthorized acts."

Defendants answered by general denial and cross-petitioned for judgment against plaintiff in the amount of $9,500, an amount they claim plaintiff owes because plaintiff had earlier failed to pay additional capital upon general partner Belco's request, as authorized by the partnership's organic agreements.

Plaintiff denied liability on the debt and countered with allegations of capital contributions totaling $21,600.95, all of which he wanted returned.

After a somewhat arduous and prolific course of pretrial pleading, the case was tried to the court January 21, 1975. Following the submission of more briefs judgment was entered for plaintiff July 9, 1975, in the amount of $9,180.99 plus costs and a $3,000 attorney's fee.

Belco assails the trial court for (1) failing to find that plaintiff had abandoned his partnership interest, (2) finding that repayment of plaintiff's capital contribution takes precedence over repayment of Belco's loans, (3) failure to grant defendants judgment on their cross-petition, and (4) awarding plaintiff an excessive judgment.

Plaintiff on the other hand contends that the amount of both the damages and awards are insufficient.

## III

Defendants argue first of all that Dycus is not entitled to an accounting because he, at some point during the seven years, abandoned his partnership interest. They point to, among other things, plaintiff's refusal to honor Belco's 1969 call for contribution of additional capital and to his silence of several months in 1972 during the period between Belco's granting of the sale option and the sale's consummation. Defendants also claim plaintiff's lack of interest is evidenced by his execution in 1967 of a consent to sale of the hotel in a transaction wholly unrelated to the one involved here and one which was never carried out.

To abandon one's property is to relinquish, or give up all ownership interest in it. How this is accomplished with regard to the ownership of shares in a limited partnership other than by written transfer is not explained by defendants. Certain it is that failure to respond to a contribution call, or remaining aloof from partnership affairs, or doing any other thing which demonstrates a lack of interest in or concern for the entity cannot provide the foundation for a finding that the owner of the interest has thereby somehow divested himself of it. By its very nature a limited partner's role is a passive one and requires no participation in management of the partnership—a characteristic which justifies the limitation on liability. Indeed, by statute a limited partner must remain inactive or run the risk of incurring general partnership liability. 54 O.S.1971 § 148.

We hold plaintiff did not abandon his interest in the enterprise.

## IV

Next defendants contend Belco's loans should be repaid prior to any return of capital contributions to limited partners. Their theory is premised on provisions of the articles of limited partnership which state that any "advances" by either limited

or general partners are to be deemed loans to and debts of the partnership and further that upon dissolution the partnership is first to repay all debts. This means, according to defendants, that since Dycus made no advances, Belco's loans must be repaid ahead of any return to plaintiff of his capital contributions.

This reasoning is unsound. The contractual terms relied upon by Belco directly conflict with the provisions of Oklahoma's Uniform Limited Partnership Act, 54 O.S. 1971 §§ 141–171. According to § 164 of the Act, entitled "Order of payment of liabilities on dissolution," first priority belongs to creditors *other than* "limited partners on account of their contributions, and . . general partners." Next in line are the limited partners for repayment of their proportionate shares of any profits and return of their contributions. Then follows recoupment by general partners.

■■■ This priority conflict between the partnership articles and the statute is resolved by 15 O.S.1971 § 211 which pronounces illegal all contracts "[c]ontrary to the policy of express law, though not expressly prohibited . . . ." Any contracts or portions thereof in derogation of our statutes will not be enforced by courts of this state. *Walker v. W. T. Rawleigh Co.*, 133 Okl. 75, 271 P. 166 (1928). And contractual illegality must be inquired into on appeal whether raised by the parties or not. *Sigmon Furniture Mfg. Co. v. Massey*, 192 Okl. 436, 137 P.2d 793 (1943).

■■■ We hold, then that Belco's claim for advances must take a statutory place behind creditors and limited partners. As to money paid as capital contributions, however, one who is both limited and general partner ·is subject to all restrictions of a general partner except in respect to his limited partner contribution. 54 O.S.1971 § 153. Therefore, Belco is entitled to repayment on a parity with plaintiff to the extent of the qualifying portion of its limited partner contribution.

## V

■■ We turn now to the problem of determining the proper amount of money due plaintiff. As we mentioned earlier, both parties find fault with the judgment below—plaintiff decries its inadequacy, defendants its excessiveness.

The funds available for distribution according to the record are those resulting from the sale amounting to $75,972.81.[1] According to testimony of Belco's president all partnership debts, except those owed Belco, were paid or settled after the sale for a total amount of $29,098.04. Therefore, after payment of creditors, there remained a net amount of $46,874.77 available to the partnership for repayment to limited partners "in respect to the capital of their contributions." 54 O.S.1971 § 164(a)(3).

The amount of plaintiff's contribution beyond his initial $7,600 is sharply contested. Plaintiff claims to have contributed an additional $1,580.99, an amount carried on the partnership's books and credited to plaintiff's capital account until the entry was erroneously dropped from the books in 1970. Plaintiff also lists another $4,800 which he says is the value of 16 oil paintings he turned over for use in the hotel allegedly at the request of the original general partner. Finally, there are two debts paid by plaintiff which he calls capital contributions. One was a payment of $4,441.66 on a partnership loan with a local Norman bank. The other involved plaintiff's payment of $3,178.30 on a defaulted note he endorsed for a former hotel manager. All these expenditures save for the paintings were documented by plaintiff.

The lower court awarded plaintiff judgment in the amount of $9,180.99. Though we are not told how he arrived at this figure, it is apparent that he allowed plain-

---

1. This figure is arrived at as follows:

| | | | |
|---|---|---|---|
| Net purchase price after option deduction | | $155,000.00 | |
| (a) Cash down payment | $48,000.00 | | |
| (b) Loan assumptions by buyer | 79,027.19 | | |
| (c) Balance carried by seller | | 27,972.81 | $155,000.00 |

The total of (a) and (c) is $75,972.81.

tiff credit for his original $7,600 payment plus the $1,580.99 carried on but later dropped from partnership books.

This award is correct as far as it goes. It did not, however take into account plaintiff's $4,441.66 payment on the partnership note.[2] Therefore, plaintiff is entitled to reimbursement for this contribution as well.

■ So far as the value of the paintings is concerned, plaintiff offered no proof other than his oral testimony that the paintings ever existed. Plaintiff's recollection was contradicted by Belco's president who denied any knowledge of the transaction or of the paintings. Disallowance of the claim was not error because it was not satisfactorily substantiated. And with respect to the defaulted note payment, plaintiff has failed to show that the $3,178.30 he paid on the employee's note was a partnership debt whose payment enriched partnership assets. Therefore rejection of the claim will not be disturbed.

We conclude that plaintiff's capital contribution was $13,622.65.

With respect to the amount of Belco's capital reimbursement claim there is also considerable controversy revolving mainly around the validity of the limited partnership interest acquisitions. This dispute we need not resolve, however, because after plaintiff is reimbursed $13,622.65 there remains more than enough money to satisfy Belco's entire claim of $30,800.00.

## VI

■ Defendants also complain that the trial court erred by its failure to award defendants $9,500, the amount of the 1969 call which plaintiff failed to meet. This contention, too, is without merit.

Belco president Harold Ware testified that Belco in its role as limited partner, did not make an additional contribution in response to its own call. Instead, Ware em-

phasized, any payments made were intended as loans. In fact, the only capital contributions made by Belco include the $4,000 originally paid at the partnership's inception, plus the contributions succeeded to upon purchase of other partners' interests.

In light of Belco's failure to respond to the call and because of its failure, from 1969 until this action began, to insist plaintiff do so, we are unimpressed with Belco's delayed complaint of plaintiff's lack of response to the call. Like many other points raised in this complex case we think it is a lawsuit afterthought. In any event defendants have, by Belco's conduct, waived whatever right they may have had to enforce payment of an additional $9,500 by plaintiff. *Steiger v. Commerce Acceptance, Inc.,* Okl., 455 P.2d 81 (1969); *Skelly Oil Co. v. Funk,* 197 Okl. 659, 174 P.2d 241 (1946).

## VII

■ Finally, plaintiff complains that the attorney's fee awarded him by the lower court is inadequate. In his supporting argument he refers to testimony not in the record. Since evidence at the hearing on the attorney's fee was not recorded we have no basis for concluding that the trial court's award of $3,000 was clearly against the weight of the evidence.

## VIII

The judgment appealed from is modified by increasing Dycus' recovery to $13,622.65. In all other respects the decree is affirmed.

BACON and NEPTUNE, JJ., concur.

---

2. Defendants admit plaintiff contributed that amount, but, in a post-trial brief they claimed they had discovered new information pointing to the fact that plaintiff made his original $7,600 contribution in two parts, with one part being this $4,441.66 payment on the partner-

ship loan. Because of this belated revelation, they maintained that plaintiff had no right to the return of this amount in addition to the $7,600. Of course the trial court ignored this unproved assertion.