HIDALGO PROPERTIES, INC., a Corporation, Plaintiff-Appellee,

v.

WACHOVIA MORTGAGE COMPANY, a Corporation, Wachovia Realty Investments, a South Carolina Business Trust, and Edward Warner, Hans W. Sanders, Bland W. Worley, Calder W. Womble, Everett C. Spelman, Sr., Robert E. Smith, Charles G. Reavis, Jr., Robert H. Pease, Buck Mickel and Howard Holderness, not individually, but as the Trustees of Wachovia Realty Investments, Defendants-Appellants.

No. 78–1240.

United States Court of Appeals, Tenth Circuit.

Argued Nov. 29, 1979.
Decided Feb. 25, 1980.

Peter B. Bradford, Oklahoma City, Okl. (John E. Sargent, Jr., Oklahoma City, Okl., with him on the brief), of McAfee, Taft, Mark, Bond, Rucks & Woodruff, Oklahoma City, Okl., for defendants-appellants.

Carl Hughes of Hughes, Nelson & Blessington, Oklahoma City, Okl. (Gene Stipe of Stipe, Gossett, Stipe & Harper, Oklahoma City, Okl., of counsel), for plaintiff-appellee.

Before SETH, Chief Judge, McWILLIAMS and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

This appeal by defendants Wachovia Mortgage Company and Wachovia Realty Investments (Wachovia) is from a judgment entered in favor of plaintiff Hidalgo Properties, Inc. (Hidalgo), in the amount of $51,-112.50. Jurisdiction is predicated upon complete diversity of citizenship in accordance with 28 U.S.C. § 1332. Hidalgo sued to recover payments made to Wachovia under a standby loan commitment, as well as related fees paid to Glen Justice Mortgage Company, a non-party entity. The case was

tried to a jury, which returned a verdict in the full amount sought by Hidalgo. We affirm.

Hidalgo is a Texas corporation organized for the purpose of building an apartment complex in McAllen, Texas. Hidalgo is domesticated in Oklahoma, having its principal place of business in Oklahoma City, Oklahoma. Wachovia Mortgage Company is a South Carolina corporation with its principal place of business in Winston-Salem, North Carolina. It acts as the principal adviser to Wachovia Realty Investments, an unincorporated South Carolina business trust.

On December 3, 1973, Hidalgo and Wachovia executed a standby loan commitment agreement whereby Wachovia agreed to fund an interim loan upon completion of construction of the apartment complex. Glen Justice Mortgage Company acted as a broker for the loan commitment and Hidalgo paid it a brokerage fee of $14,500, and a fee of $17,612.50 for a "gap" commitment. Hidalgo also paid Wachovia a total of $29,-000 in commitment fees under the agreement.

The purpose of the standby loan commitment agreement was to enable Hidalgo to obtain a construction loan from Corpus Christi Bank, and to allow Hidalgo time at the end of construction to find favorable long-term financing. The loan commitment was in the amount of $1,450,000 for a period of three years at an interest rate of 14%. The agreement provided that the commitment fee paid by Hidalgo to Wachovia was not refundable and that the loan was subject to the fulfillment of twenty-one terms and conditions.

On May 31, 1975, Wachovia was notified by the construction lender, Corpus Christi Bank, that construction of the apartment complex was completed. Closing instructions with regard to the standby loan were requested from Wachovia. At that time Wachovia notified Hidalgo that it would not fund the loan, asserting that Hidalgo had done nothing since December 3, 1973 to comply with the terms and conditions of the commitment. Thereafter Hidalgo brought

this action to recover the fees it had paid to obtain the loan commitment.

Wachovia contends on appeal that the case should never have gone to the jury. Rather, it argues that its motion for a directed verdict should have been granted because the commitment fee was "non-refundable" under the terms of the loan agreement. It contends further that it was entitled to a directed verdict because Hidalgo failed to perform several conditions precedent required by the contract, thereby excusing Wachovia's performance. Wachovia also appeals the trial court's refusal to admit Wachovia's offer of proof on mitigation of damages, and the trial court's jury instructions.

I.

*The Denial of Directed Verdict*

In a diversity case, the federal standard is applicable in determining whether the evidence is sufficient to go to the jury. *Ward v. H. B. Zachry Construction Co.,* 570 F.2d 892 (10th Cir. 1978); *Mr. Steak, Inc. v. River City Steak, Inc.,* 460 F.2d 666 (10th Cir. 1972). Under the federal rule, the trial judge may grant a motion for directed verdict only when all the inferences to be drawn from the evidence are so patently in favor of the moving party that reasonable men could not differ as to the conclusions to be drawn therefrom. *Symons v. Mueller Co.,* 493 F.2d 972 (10th Cir. 1974); *Taylor v. National Trailer Convoy, Inc.,* 433 F.2d 569 (10th Cir. 1970). All such evidence and inferences in this regard must be construed in the light most favorable to the party against whom the motion is directed. *Wilkins v. Hogan,* 425 F.2d 1022 (10th Cir. 1970).

Wachovia asserts that it was entitled to a directed verdict because the fee paid to it by Hidalgo was "non-refundable." We find this argument to be totally without merit. Hidalgo has chosen to forego recovery of the value of full performance by Wachovia, and instead seeks only to collect the expenses incurred by it in performing the contract. This is a proper measure of

damages. *Osborn v. Commanche Cattle Industries, Inc.,* 545 P.2d 827, 832 (Okl.Ct.App. 1975); 5 Corbin, *Contracts* § 1031. *See also United States v. Behan,* 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168 (1833); *L. Albert & Son v. Armstrong Rubber Co.,* 178 F.2d 182 (2d Cir. 1949). Wachovia cannot exempt itself from a suit to recover this element of damages by designating fees paid as non-refundable in an agreement which it prepared.

Wachovia urges alternatively that the directed verdict should have been granted because Hidalgo failed to perform conditions precedent under the contract, thereby justifying Wachovia's refusal to make the loan. Hidalgo asserts, on the other hand, that the conditions in question were either waived by Wachovia or their performance was excused by Wachovia's repudiation.

Wachovia cites three conditions which it claims Hidalgo failed to perform. First, paragraph 10 of the loan agreement provided that *prior to funding* Wachovia was to be presented with a final survey and title policy. Hidalgo testified that it had those documents prepared for presentation at the closing, and that any liens on the property would have been cleared so the closing could be completed. Rec., vol. II, at 226; vol. VI, at 131–132, 165–167.

■ A party is excused from tendering performance of conditions precedent when the other party repudiates the contract. *Bu-Vi-Bar Petroleum Corp. v. Krow,* 40 F.2d 488 (10th Cir. 1930); *Midwest Engineering & Construction Co. v. Electric Regulator Corp.,* 435 P.2d 89 (Okl.1967). The evidence in this case presented an issue as to whether Hidalgo stood ready to tender performance and was excused by Wachovia's repudiation. There can be no directed verdict where there is evidence tending to support a party's theory of recovery. *Yazzie v. Sullivent,* 561 F.2d 183 (10th Cir. 1977); *United States v. Fenix & Scisson, Inc.,* 360 F.2d 260 (10th Cir. 1966). We find that the trial judge properly allowed the disputed question of excuse of performance to go to the jury under *Midwest, supra.*

■ Second, paragraph 14 of the loan agreement required Wachovia to be furnished with a foundation completion certificate *promptly upon completion of foundation.* Under Oklahoma law, "a person may waive a right by conduct or acts which indicate an intention to relinquish it, or by such failure to insist upon it that the party is estopped to afterwards set it up against his adversary." *Steiger v. Commerce Acceptance of Oklahoma City, Inc.,* 455 P.2d 81, 89 (Okl.1969), quoting *Scott v. Signal Oil Co.,* 35 Okl. 172, 128 P. 694 (1912). *See also Midwest Engineering & Construction Co. v. Electric Regulator Corp., supra.*

There was ample evidence introduced at trial that Wachovia knew the foundations had been completed. Rec., vol. II, at 221–222; vol. VI, at 75–79. It was undisputed that its own employee had viewed the construction site after completion of the foundation, and had taken pictures of it. *Id.* Subsequently, Hidalgo and Wachovia exchanged letters regarding the release of a parcel of land from the security agreement, and Wachovia also wrote to inform Hidalgo that the Wachovia office was being moved to Dallas. Rec., vol. II, at 215–217. Despite its knowledge that the foundations were in place, Wachovia never mentioned Hidalgo's failure to furnish the foundation certificate, and did not inform Hidalgo that it considered such failure a breach sufficient to warrant denial of the commitment.

■ A party to a written contract who intends to assert a breach of its terms must act reasonably to inform the adverse party of the intended claim of breach. *Spurgin v. Bennett,* 196 Okl. 673, 168 P.2d 134 (1946). Failure of Wachovia to demand performance when it knew the time for performance had arrived and passed created issues of reasonableness and waiver for the jury.

■ Finally, paragraph 15 of the agreement required completion of construction to be certified by the approved architect, and proper zoning to be certified by public authorities. Hidalgo testified that it was prepared to present the documents at closing. Rec., vol. VI, at 118; vol. VII, at 208, 232–

233. There was no time set for delivery of these documents, allowing an inference that the documents could properly have been tendered at closing.

Under the circumstances of this case, the trial court did not err in refusing to direct a verdict.

## II.

### Mitigation of Damages

Wachovia attempted to introduce evidence of a permanent loan which it claims was made available to Hidalgo by the construction lender, Corpus Christi Bank, approximately five months after Wachovia refused to make the standby loan. Wachovia argues on appeal that Hidalgo failed to mitigate its damages when it did not accept the loan, and that the trial court erred in refusing to admit evidence regarding the proposed loan.

Hidalgo has not sought to recover lost profits occasioned by Wachovia's breach. It has chosen only to sue for its out-of-pocket expenses incurred in performing the contract. Under these circumstances, we are unclear as to exactly how the Corpus Christi loan could be used to establish and measure a failure to mitigate damages. The simple fact of the matter is that Hidalgo paid Wachovia to make a loan available upon completion of construction, and Wachovia failed to perform. The expenses already incurred by Hidalgo for the Wachovia commitment could in no way be "minimized" by Hidalgo's subsequently obtaining a loan elsewhere.

■ Even if it could be said that Hidalgo had some duty to avoid the consequences of Wachovia's default, the effort which an aggrieved party must make to lessen its damages need only be reasonable under the circumstances of the particular case. *R.E.B. Inc. v. Ralston Purina Co.*, 525 F.2d 749 (10th Cir. 1975). As was stated in *Smith-Horton Drilling Co. v. Brooks*, 199 Okl. 63, 182 P.2d 499, 502 (1947):

> One who is injured by the acts of another is required to do that which an ordinary prudent person would do under similar

circumstances to mitigate or lessen damages. *He is*, however, *not required to unreasonably exert himself or to incur an unreasonable expense in order to do so.* *Sackett v. Rose*, 55 Okl. 398, 154 P. 1177, L.R.A. 1916D, 820; *Cities Service Gas Co. v. Eggers*, 186 Okl. 466, 98 P.2d 1114, 126 A.L.R. 1278.

(Emphasis added). *And see Griffin v. Bredouw*, 420 P.2d 546 (Okl.1966).

■ In the present case, we are not dealing with failure to buy easily replaceable goods or services in the market place. Rather, Wachovia is insisting that Hidalgo should have avoided the consequences of Wachovia's breach by procuring a permanent loan for $1,450,000. However, Wachovia had the burden of proving that damages reasonably could have been avoided or reduced. *Consolidated Cut Stone Co. v. Seidenbach*, 181 Okl. 578, 75 P.2d 442 (1937); *Staner v. McGrath*, 174 Okl. 454, 51 P.2d 795 (1935).

■ Here, the trial judge was very liberal in allowing Wachovia to attempt to make an offer of proof with regard to the circumstances of the Corpus Christi loan. Rec., vol. VII, at 187–198. However, the trial court concluded that the terms and conditions of the proposed loan were too uncertain and tentative to be used to determine whether Hidalgo could or should have completed the loan. Upon a review of the evidence, we agree with the trial court that there was no issue of mitigation for the jury.

## III.

### Jury Instructions

■ Wachovia appeals from the jury instructions given by the trial court. It is argued that the court improperly refused to instruct the jury as Wachovia requested on the issue of conditions precedent. It appears from the record that Wachovia failed to object to the trial judge's instructions on conditions precedent, or to the judge's rejection of its offered instructions on the

matter.[1]  Rec., vol. VII, at 322–323.  When a proper objection is not made at trial, we need not decide whether such an instruction was appropriate or if the Oklahoma cases cited require that such an interpretation be given.  *Crossland v. Continental Casualty Co.*, 374 F.2d 586 (10th Cir. 1967).

With respect to the other claimed errors, we have reviewed all the instructions given by the trial court and we find them to be more than adequate to instruct the jury on the pertinent law.  *Continental Baking Co. v. Old Homestead Bread Co.*, 476 F.2d 97 (10th Cir. 1973).

Affirmed.

---

1. Rule 51, Federal Rules of Civil Procedure, specifically provides as follows:

    No party may assign as error the giving or failure to give an instruction unless he ob-jects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.