Jack D. FUDGE and Jo S. Fudge
d/b/a Fudge Enterprises,
Appellees,

v.

UNITED URBAN INDIAN COUNCIL,
INC. d/b/a American Indian Training
& Employment Program, Appellant.

No. 71407.

Court of Appeals of Oklahoma,
Division No. 2.

Dec. 4, 1990.

F. Anthony Musgrave, Robinson and Hoover, Oklahoma City, for appellees.

Judy Lewis, Edmond, for appellant.

BRIGHTMIRE, Chief Judge.

The ultimate question in this commercial lease dispute is whether there was an executed oral modification of a lease agreement after the tenant relinquished a portion of the leased premises. The trial court held there was not, awarded the landlord damages for breach of the original lease and denied the tenant's counterclaim for overpaid rent.

We hold, however, there was a modification of the lease and reverse.

I

In May 1984 the defendant tenant, United Urban Indian Council, Inc., a vocational training program funded through the U.S. Department of Labor, negotiated for the leasing of two offices from the landlord Fudge Enterprises. The landlord proposed that the lease term run from July 1, 1984, through June 1987, and that it include a monthly rental of $1,740 based upon the square footage leased, with the first and last month's rent paid in advance. Because of its biennial funding cycle, however, the tenant objected to the three-year lease term, and informed the landlord's co-owner that it was not assured of adequate revenue to lease the entire space for more than two years. The landlord's negotiating co-owner is said to have responded to this by

telling the tenant's director that there would be "no problem."

In 1986 funding for the Council was reduced and it was forced to relinquish the smaller of the rented offices. The landlord's co-owner was informed of the problem and both parties then tried unsuccessfully to find a new tenant for the unused space. The landlord's negotiator offered to release the tenant from any liability for the empty space in exchange for the tenant's agreement to lease the occupied space for an additional three years—a proposal which was never accepted.

Instead, in July 1986, the tenant began paying $1,160 a month for the space it actually occupied. At the same time the landlord began sending the tenant monthly statements which requested the reduced rental payment and then accepted such payment without objection. This course of conduct continued during the final year of the lease term until April 1987. At that time the tenant gave the landlord written notice that it would be vacating the premises, and attached a check for $2,320—the April and May rent—which, together with the prepaid June rental, paid the rent to the end of the lease.

Nevertheless, on June 5, 1987, the landlord filed this action seeking $6,380—the amount it claims the tenant underpaid during the last eleven months of the lease. The tenant answered on July 27, 1987, and counterclaimed for $580 which it said was an overpayment based on the difference between "the last month's rental paid in advance ... and the actual monthly rental under the modification of the lease agreement."

The trial court found for the landlord on both its claim and the tenant's counterclaim and entered judgment accordingly. The Council appeals.

## II

The tenant assigns as error the trial court's failure to find that the original lease agreement of the parties had been modified by an executed oral agreement and the conduct of the parties.

The argument is that the executed reduction of rent, coupled with the the landlord's acceptance of that amount for eleven months without objection, constitutes an executed oral modification of the original lease agreement.

The landlord contends, on the other hand, that its attempts to mitigate its damages by re-leasing the space, coupled with its proposed "addendum to the original agreement" clearly show that it was "not the intent of [the landlord] to execute an oral modification of the original agreement."

The controlling law is found in 15 O.S. 1981 § 237, which states: "A contract in writing may be altered by a contract in writing, *or by an executed oral agreement,* and not otherwise." [1] Thus the trial court correctly identified the issue to be resolved as "whether or not the [landlord] has acquiesced in a reduction of rent." The trial court held that it had not. We disagree.

Here, unlike in *Carpenter v. Riddle,*[2] we are not dealing with an abandoned lease situation. The undisputed facts in this case are that the tenant did not abandon the lease but paid for as much space as it actually used with the implicit approval of

---

1. Emphasis added.

2. 527 P.2d 592 (Okl.1974). At first blush the decisional rule of law stated in *Carpenter* appears to support the landlord. It is summarized as follows:

   "[I]f a tenant wrongfully abandons leased premises before the expiration of the term, the landlord, at his election, may: (1) terminate the lease contract, enter and take possession recovering accrued rents to the date of entry, or (2) do nothing to terminate the lease or disturb possible possession and sue at the appropriate time for the entire term, or (3) give notice to defaulting tenant of his refusal to accept the surrender ... and sublet the premises for the benefit of the tenant to mitigate his damages."

   This statement of the law applied to both commercial and residential lease contracts until 1978 when the Oklahoma Residential Landlord and Tenant Act, 41 O.S.Supp.1990 §§ 101 through 136 was enacted. The second option was extinguished with regard to residential lease abandonment disputes in 1978 by the enactment of 41 O.S.1981 § 129(B).

the lessor. Indeed, it can be said that the landlord agreed to a modification of the lease as manifested by the monthly statements it presented to the tenant together with the landlord's acceptance of the tendered amount of rent without objection. Such affirmative acts clearly demonstrate the landlord's joinder in executing a modification of the lease contract.

Parenthetically, we note that even if one were to characterize the tenant's relinquishment as an abandonment, the landlord still could not prevail since it accepted the partial surrender in order to keep the Council as a tenant for the rest of the leasehold estate.

### III

Under such circumstances we hold that the appealed judgment is erroneous as a matter of law. It is therefore vacated and the cause is remanded with directions to enter judgment for the tenant on both the landlord's claim and the tenant's counterclaim.

REIF, P.J., concurs.

MEANS, J., dissents.

MEANS, Judge, dissenting.

I respectfully dissent.

Defendant United Urban Indian Council, Inc., (Tenant) appeals the trial court's order overruling its motion for new trial in this commercial landlord-tenant dispute. The court awarded judgment for $6,380 to Plaintiffs, Jack D. Fudge and Jo S. Fudge d/b/a Fudge Enterprises (Landlord), on their claim for breach of the lease, and denied Tenant's counterclaim to recover allegedly overpaid rent. Having reviewed the record and applicable law, I would affirm.

Initially, it should be noted that Tenant has not briefed the first, second, and fifth errors proposed in its petition in error. Those propositions are therefore deemed abandoned. *State ex rel. Remy v. City of Norman*, 642 P.2d 219, 222 (Okla.1981).

Landlord's petition alleged that the parties had executed a written office lease agreement in May 1984. The term of the lease was three years. Landlord claimed that Tenant had defaulted on its lease obligations, and prayed for $6,380 allegedly past due.

Tenant denied Landlord's allegations and asserted that the parties had, in effect, executed an oral modification of the lease. Tenant concluded that the obligation claimed by Landlord had been satisfied and that Tenant had in fact overpaid by $580, for which it counterclaimed against Landlord.

At trial, Jack Fudge testified that Tenant had leased two offices, totalling 2,321 square feet, for a lease term from July 1, 1984, through June 1987. The rent totalled $1,740. Two years into the term, in July 1986, Tenant vacated the smaller office and began tendering rent of $1,160. Fudge testified that "[w]e were in negotiations from oh, several months prior to them vacating the suite.... Originally, we both tried to rent the space. If we were able to re-rent it before they vacated it and we didn't lose any rent, then there would have not been any problem...." Fudge had instructed his bookkeeper to accept the lesser rent because he was "trying to salvage them as a tenant." He said that his company did not regularly send out bills, but that if they had given one to Tenant, the bookkeeper would have delivered it.

Landlord had unsuccessfully attempted to re-lease the premises. Fudge also stated that he had submitted a proposal to Tenant in which the rental on the smaller office was forgiven if Tenant would re-lease the larger space for an additional three years. The proposal was never accepted by Tenant.

Tenant then presented the testimony of its executive director, Robert Giago, who had signed the 1984 lease. He testified as to the negotiations and representations surrounding the execution of the lease. The parties stipulated that Tenant's federal funding grant had been reduced in 1986. According to Giago, the reduction precipitated Tenant's reduction in office space. He had notified Jack Fudge of this on two separate informal occasions.

Giago testified that Tenant had received a rent statement from Landlord for every month of the lease period, and that, beginning in July 1986, Landlord's statement reflected a balance due of $1,160. Giago never received any correspondence indicating that Landlord expected additional rent, or any objection to the lesser amount when paid.

Tenant had vacated the remaining leased office in April 1987, three months prior to the lease's end. On April 7, Giago sent Fudge a letter enclosing rent for April and May. The June rent, based on the original monthly amount due, had been prepaid at the inception of the lease; the $580 difference between the $1,740 prepaid and the $1,160 paid during the final year of occupancy formed the basis for Tenant's counterclaim. Tenant again received no correspondence concerning default after vacating the premises.

The trial court found in favor of Landlord on both the primary action and the counterclaim, and entered judgment accordingly. Tenant filed a motion for new trial, which was denied. From these rulings, Tenant appeals.

In an action at law tried to the court with the jury waived, the finding of the court is as binding on appeal as the verdict of a jury. If there is any competent evidence to support the finding, it will not be disturbed on appeal. *Pracht v. Oklahoma State Bank*, 592 P.2d 976, 978 (Okla.1979).

On appeal, Tenant argues that the executed oral reduction of rent constitutes a modification of the lease agreement, and that the Landlord's failure to object to the reduced rent and the vacation of the premises, coupled with its acceptance of the lower amount, waived the right to the recovery sought. Conversely, Landlord argues that its proposed lease extension/liability release and its attempt to mitigate damages by re-leasing the vacated space indicate an intent to hold Tenant to the original contract terms.

I find Tenant's first argument unpersuasive. A written contract may only be modified by another written contract or by an executed oral agreement. 15 O.S.1981

§ 237. Such an agreement must be proven by positive, clear and convincing evidence. *Dewberry v. Universal C.I.T. Credit Corp.*, 415 P.2d 978, 979 (Okla.1966). There is competent evidence in the record to support a finding that Landlord never orally agreed to a modification of the rental terms. Jack Fudge expressly denied doing so, and Giago merely stated that he "told" Jack Fudge of Tenant's intent to vacate the premises, and that Fudge "understood" the reduction of space and rent.

However, the real crux of Tenant's argument is that Landlord's actions in billing and accepting the lower rent, along with its failure to object to the arrangement, waived any right to assert a claim for the unpaid balance of the original rent obligation. A party may waive a right either by acts which indicate an intent to relinquish it, or by such failure to insist upon it that the party is estopped to afterwards assert it. *Steiger v. Commerce Acceptance of Oklahoma City, Inc.*, 455 P.2d 81, 89 (Okla.1969) (quoting *Scott v. Signal Oil Co.*, 35 Okl. 172, 128 P. 694 (1912) (syllabus 1)).

If a tenant wrongfully abandons the leased premises before the expiration of the term, the landlord, at his election, may terminate the lease, enter and take possession, recovering accrued rents to the date of entry; do nothing to terminate lease or disturb possession and sue for the entire term when due; or give notice to the defaulting tenant that surrender is refused, and sublet the premises for the tenant's benefit. *Carpenter v. Riddle*, 527 P.2d 592, 593–4 (Okla.1974). Landlord did not re-enter the premises but rather exercised the second option available to it under *Carpenter*. Since Landlord had the right to do nothing to terminate the lease, it cannot be said that such inaction indicated an intent to relinquish the right to sue at the end of the lease term.

Further, the trial exhibits were withdrawn after trial and do not appear in the record before us. Without a copy of the lease before us, it cannot be determined whether the obligations concerning the two offices were severable. Landlord's acts in

accepting the partial rent may be viewed merely as a recognition of the remainder of the lease obligation, rather than an affirmative relinquishment of the right to seek damages for breach of any part of the contract. Landlord notified Tenant that release of the lease obligation for the smaller office was contingent upon a lease extension for the remaining office. The trial court's refusal to find that Landlord had intentionally waived its right to seek damages for breach was supported by competent evidence.

Under the above definition of waiver, a party may also waive a contract right by such failure to insist upon it that the party is estopped to afterwards assert it. In order to show such an estoppel, however, Tenant must show that it detrimentally relied on Landlord's silence regarding the reduced rent. Other than its continuing breach of contract, Tenant presented no evidence to show such a detriment.

I would affirm the judgment of the trial court.